1    **Thimesch Law Offices**
     TIMOTHY S. THIMESCH, ESQ., No. 148213
2      tim@thimeschlaw.com
     158 Hilltop Crescent
3    Walnut Creek, CA 94597–3452
     Tel: 925/588–0401
4    Fax: 888/210–8868

5    Attorneys for Plaintiff GENEVA LEMA

6    GARY R. BASHAM (Bar No. 130119)
     AARON R. JACKSON (Bar No. 233816)
7    BASHAM LAW GROUP
     701 University Avenue, Suite 220
8    Sacramento, California 95825
     Telephone: (916) 993–4840
9    Facsimile: (916) 993–4849

10   Attorneys for Defendant MODESTO HOSPITALITY, LLC

11

12                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF CALIFORNIA
13

14   GENEVA LEMA,                      CASE NO. 1:10–CV–02018–AWI–GSA
                                       Civil Rights
15           Plaintiff,

16   v.                                [Proposed] **FULL CONSENT DECREE
                                       ORDER AND JUDGMENT**
17   MODESTO HOSPITALITY, LLC; DOES 1
     THROUGH 50, Inclusive,
18
             Defendant.
19

20

21
     _____ /
22

23   ////

24   ////

25   ////

26

27

28

FILED

DEC. 1 8 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

## FULL CONSENT DECREE ORDER AND JUDGMENT

**INTRODUCTION**

1.      Plaintiff GENEVA LEMA is a person with a disability whose condition requires the full time use of a wheelchair for mobility.

2.      Defendant MODESTO HOSPITALITY, LLC (hereafter "Defendant") is the owner of the public accommodation Doubletree Hotel, located at or near 1150 Ninth Street, Modesto, California (hereafter, "Subject Hotel").

3.      Together Plaintiff and the Defendant shall be referred to collectively herein as the Parties.

4.      Plaintiff filed this action for herself and all other similarly situated members of the public to vindicate their rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and Civil Code Section 54 and 54.1.  Plaintiff alleges that Defendant violated these statutes at its normal paths of travel and designated accessible routes, valet and parking facilities, entrances and exits, registration, dining areas, bars, public restrooms, business center, conference rooms, pool area, fitness center, ice and vending machines, stairways, and its guestrooms and suites, and their attendant bathrooms, deny basic access to persons with disabilities.  Specific identification of the facilities and their deficiencies were identified in the Complaint filed on October 26, 2010, and the subsequent amendment to that Complaint.  Plaintiff additionally alleges that the subject building and site has undergone new and alteration construction triggering the requirement of full compliance with regulations in the altered areas, and that Defendant could easily afford to makes its facilities and services accessible without significant difficulty or expense.

5.      Defendant denies the allegations in the Complaint, and amended Complaint, filed by Plaintiff, and by entering into this Consent Decree and [Proposed] Order does not admit liability to any of the allegations in Plaintiff's Complaint filed in this action.

6.      The Plaintiff and Defendant hereby enter into this Consent Decree and [Proposed] Order for the purpose of entering into an early settlement of Plaintiff's claims for

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

1  statutory, compensatory and personal injury damages, and to fully resolve the issues, claims

2  and defenses in this case.

3  **STIPULATIONS**

4  **7.    Plaintiff's Qualified Disability.** Plaintiff qualifies as a "person with a physical

5  disability" as defined by the relevant statutes. She is a person of short stature and cannot stand

6  up independent of aids. This permanent physical disability is caused by the life-long condition

7  of *osteogenesis imperfecta*. It requires that she use aids for certain mobility, i.e., either a

8  wheelchair, or, on a short term basis, two hand–crutches. Because of certain dexterity

9  limitations caused by these physical disabilities, and the additional difficulties associated

10  through the use of these mobility aids, including the limitation of her reach-range while seated

11  in the wheelchair, or having her hands occupied by the crutches, or maintaining balance when

12  she does not, she also has difficulties related to grasping, pinching and twisting of the wrist.

13  **8.    Plaintiff's Status as Aggrieved and Potentially Aggrieved.** Plaintiff alleges

14  she has standing to bring this action. She lives in Concord, California. She, however, regularly

15  travels to, conducts business and personal affairs in, Modesto, including the general downtown

16  area where the Subject Hotel is located. These activities include activities related to her

17  traveling ministry business, attending conferences at the hotels adjacent convention center, and

18  dining and shopping. She is a repeat customer of this hotel. While the Defendant does not

19  admit to all of the foregoing allegations, it agrees that sufficient undisputable facts exist to

20  support Plaintiff's qualification as "aggrieved and potentially aggrieved" under the relevant

21  statutes, and her individual standing under Article III of the U.S. Constitution, and do not

22  contest the same. In the event the Court seeks stipulated facts supporting the basis of

23  jurisdiction, Defendants will cooperate in providing same, including the documentation and

24  facts available to them concerning Plaintiff's past patronage at the hotel as well as her

25  solicitations for information as to past and future bookings.

26  **9.    Qualified Facilities.** The Subject Hotel qualifies as a "public accommodation"

27  and "commercial facility" under all applicable statutes and regulations.

28  **10.    Alteration History.** The Parties stipulate that some or all of the facility in issue

–2–

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 4 of 122

1    has undergone sufficient and recent alteration and/or new construction to require compliance

2    with various provisions of the Americans With Disabilities Act, as it applies to altered

3    facilities, and that the hotel is otherwise subject to the requirements of Civil Code Section 54.3

4    and Title 24 of the California Code of Regulations.

5        **11.    Scope of Facilities in Issue.**   The following are the facilities at the Subject

6    Hotel affected by this Consent Decree, including, but not limited to: the normal paths of travel

7    and designated accessible routes, valet and parking facilities, entrances and exits, registration,

8    dining areas, bars, public restrooms, business center, conference rooms, pool area, fitness

9    center, ice and vending machines, stairways, and its guestrooms and suites, and their attendant

10   bathrooms.

11   .

12   **JURISDICTION**

13       **12.**    The facts requisite to federal jurisdiction are admitted.   This Court has

14   jurisdiction pursuant to 28 U.S.C. §1331 for the alleged violations of the ADA, 42 U.S.C.

15   §§ 12101, et seq. Article III jurisdiction is proper due to the Plaintiff's continued exposure and

16   use of the hotel.   Supplemental jurisdiction of the state law claims arises from a common

17   nucleus of fact and law, and is therefore proper.

18       **13.**    This Court shall have continuing jurisdiction to interpret and enforce this

19   Consent Decree until Defendant has fulfilled all conditions hereunder.   This agreement is

20   contingent upon Court acceptance of this continuing jurisdiction.

21       **14.**    The Parties agree to entry of this Consent Decree in order to resolve the

22   allegations raised in the Complaint filed with this Court on October 26, 2010, and the

23   subsequent amendment to that Complaint.   Accordingly, the Parties agree to this Consent

24   Decree without trial or further adjudication of any issues of fact or law concerning the issues

25   specified within the Full Consent Decree Judgment and Order.

26           WHEREFORE, the Parties hereby agree and stipulate to the Court's entry of this

27   Full Consent Decree Judgment and Order, which provides as follows:

28

Shlansach Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

-3-

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 5 of 122

1  **SCOPE OF SETTLEMENT**

2  **15.** This Consent Decree shall be a full, complete, and final disposition and

3  settlement of any and all claims that have been or could have been alleged in the Complaint, or

4  any amendment thereto, including for injunctive relief, declaratory relief, reasonable statutory

5  and compensatory damages, including personal and bodily injury, but excepting the claim for

6  an award of reasonable statutory attorney fees, litigation expenses and costs, which shall be

7  resolved as provided below. This Consent Decree was reached through negotiations between

8  the Parties. The Parties agree that if they or any of them seek Court enforcement of this Full

9  Consent Decree Judgment and Order, any such enforcement will be by noticed motion,

10  application or other appropriate request for an order for specific performance, and that a

11  contempt citation or decree will not be sought by any party.

12

13  **AGREEMENTS CONCERNING INJUNCTIVE RELIEF**

14  **16.** **Specific Agreed Remediation.** As a part of a compromise, the Defendant

15  agrees that the corrective work and modification of policies listed in Exhibit 1 will be

16  undertaken to eliminate alleged barriers at the Subject Hotel by Defendant. Exhibit 1 is

17  incorporated herein by reference.

18  **17.** **Option to Close Facilities.** In lieu of making modification to any particular

19  facility or amenity called for by this decree, the Defendant may choose to permanently

20  close/remove such facility, element or amenity from public use. Such facility, element or

21  amenity shall not be reopened or re-provided for public use without provision of full disabled

22  access in compliance with current standards and specifications for altered facilities of the

23  Americans with Disabilities Accessibility Guidelines ("ADAAG") and California Code of

24  Regulations, Title 24-2 ("Title 24-2"), as they exist at the time of the signing of this consent

25  decree.

26  **18.** **Time for Compliance.** The modification of policies and corrective work agreed

27  to will be undertaken as follows:

28

Wineech Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

−4−

1. <u>Work that does not require permits:</u>  Barrier removal that does not require permits by any enforcing agency will be completed within one hundred and twenty (120) days of the approval of this Order by the Court, allowing for good faith interruptions due to inclement weather, contractor unavailability, and other causes under the Doctrine of Force Majeure.

2. <u>Work requiring permits:</u> Defendants will submit permits for any barrier removal requiring permits within ninety (90) days of the Court's approval of this Order. The work requiring permits will be completed within two hundred and eighty (280) days of obtaining approval for permits for corrective work, allowing for good faith interruptions due to inclement weather, contractor unavailability, and other causes under the Doctrine of Force Majeure.

19.   **Confirmation of Completion of Work.**   Within   ninety   (90)   days   of completion of all work called for by this agreement, and Exhibit 1 thereto, Defendant shall provide Plaintiff's Counsel with a Certificate of Completion, which may be completed by Larry Wood, or through another CASp consultant.   After Plaintiff receives the Certificate of Completion, if there is a concern or dispute as to any part of its contents, Plaintiff's Counsel will notify Defendant's Counsel of their concerns in writing.   Thereafter, Defendants at their option will have fourteen (14) days to provide an amended Certificate of Completion to address the issues raised by Plaintiff's Counsel.   Following the provision of an amended Certificate of Completion, if any reasonable dispute remains as to any portion of the Certificate of Completion, Plaintiff's Counsel will have the right to inspect the particular area in dispute.

20.   **Enforcement.**  If Plaintiff believes that Defendant has not complied with the terms of this Consent Decree, Plaintiff's counsel will inform Defendant's counsel, (or otherwise agreed upon representative for Defendant) in writing and give Defendant thirty (30) days to correct any alleged violations.  After the elapse of thirty (30) days, Plaintiff may seek Court enforcement of the terms and conditions of this Consent Decree via a noticed motion in the event the parties are unable to reach an agreement regarding any alleged violations.  The "prevailing party" in such motion proceedings, whether in full or in part, <u>may</u> be entitled to an award of reasonable attorney fees, litigation expenses and costs for such motion, i.e., the fee recovery shall be pursuant to the normal prevailing party standards that applied under the subject fee shifting statutes named in the Complaint and *Christianburg Garment Co. v. EEOC* 434 U.S. 412 (1978).

Shlunsch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

−5−

21.     During the time period that the remediation of the Subject Property is occurring, Plaintiff will not be excluded from the premises. However, Plaintiff agrees that during the aforementioned time period, Plaintiff will not assert any claims for relief against Defendant or seek any remedies against Defendant; Plaintiff will be limited to the enforcement mechanisms provided herein.

**AGREEMENT CONCERNING DECLARATORY RELIEF**

22.     In resolution of Plaintiff's claim for declaratory relief, Defendant has agreed to conduct the barrier removals herein in settlement of this action and claim.

**RESOLUTION OF PLAINTIFF'S DAMAGE CLAIMS**

23.     Plaintiff and Defendant have reached an agreement to settle all of Plaintiff's alleged claims for bodily, statutory, compensatory and personal injury damages. Defendant agrees to pay to Plaintiff the total the sum of Sixteen Thousand Two Hundred and Fifty Dollars ($16,250) as complete settlement for any and all claims for damages as against Defendant, excluding the claim for an award of reasonable statutory attorney fees, litigation expenses and costs, which is discussed separately below.

24.     The foregoing settlement check shall be made payable to "TIM THIMESCH, In Trust." The check shall be sent by Defendant so as to be received by Plaintiff's Counsel's within thirty (30) days of executing the Consent Decree. If overnight mail is used, Defendant shall supply Plaintiff's counsel with a tracking number. The Parties stipulate that the foregoing amount is intended to be paid in full to Plaintiff, and understand that no part of it shall be received by Plaintiff's counsel in compensation toward Plaintiff's separate claim for reasonable statutory attorney fees, litigation expenses, and costs.

**RESOLUTION OF CLAIM FOR REASONABLE STATUTORY ATTORNEYS FEES, LITIGATION EXPENSES AND COSTS:**

25.     **Prevailing Party.** Defendant has agreed to conduct the barrier removals

1   discussed herein as a result of the settlement of this action. Consequently, Plaintiff shall be

2   deemed the "prevailing party" to whom the court may award a reasonable attorneys' fee within

3   the meaning of 42 U.S.C. § 12205, and California Civil Code ¶¶ 51, 52, 54, 54.1, and 55.

4   Plaintiff and Defendant agree as part of the settlement of Plaintiff's claims as against Defendant

5   that Plaintiff's counsel shall be entitled to an award of reasonable attorneys' fees, litigation

6   expenses and costs as against Defendant. Further, notwithstanding any statement in this Consent

7   Decree regarding Defendants' dispute of the allegations and/or non-admission of liability, the

8   Parties stipulate that for purposes of the fee motion **only** that Plaintiff has been denied rights and is

9   entitled to an award of attorney's fees under Civil Code section 52. (*Doran v. N. State Grocery Inc.*

10   137 Cal.App.4th 484, at 492 (Cal. Ct. App. 2006.)

11       26.   **Settlement Efforts.** Upon the execution of this Consent Decree and prior to filing

12   any motion for attorney's fees and costs, the Parties shall make a good faith effort to negotiate and

13   settle any claims for attorneys' fees.

14       27.   **Motion Proceedings.** In the event the Parties do not settle Plaintiff's claims for

15   attorneys' fees, the amount to be awarded Plaintiff's counsel for attorneys' fees shall be determined

16   by the Court, pursuant to Federal Rule of Civil Procedure 54(d)(1) and (2), through a motion for an

17   award of attorneys' fees which must be filed by Plaintiff's counsel no later than sixty-five (65) days

18   of the Court's execution of the [Proposed] Order filed herewith. Through the foregoing motion,

19   Plaintiff may also seek recovery of his litigation expenses and costs; no separate motion for costs

   need be filed.

20       28.   **Hourly Rate and Multiplier.** Nothing herein shall be construed as limiting or

21   preventing Plaintiff's Counsel from seeking a lodestar multiplier, or limiting or preventing

22   Defendant's Counsel from seeking a reduction of the lodestar multiplier.

23       29.   **Billing Documentation and Rates.** Within seven (7) days of the execution of

24   this Consent Decree, the Plaintiff will provide Defendant complete documentation of their

25   attorney's and paralegal's fees, litigation expenses and costs, incurred in this action up to the

26   time of the hearing, redacting from the billings and timesheets only privileged information

27   concerning work product, attorney-client privilege, and the nature of the services performed.

28

Shinstock Jaw Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

1   Additionally, Plaintiff intends to seek discovery of defense counsel's billing records and rates,

2   and that of their staffs. Defendant's object to the disclosure of such records on the basis of

3   privilege. Plaintiff shall have the right to seek discovery of defense counsel's billing records;

4   and, Defendant's shall have the right to oppose such requests. The Court will have the right to

5   decide disputes pertaining to this issue.

6       **30.     Retained Jurisdiction.** During the remaining proceedings herein stated, the

7   parties shall make no motion seeking dismissal of any supplemental claims under 28 USC

8   1367, and further stipulate that on no occasion following the execution of this Consent Decree

9   shall they allege that grounds supporting such a motion exist in the present case.

10      31.     **Full Rights of Review Retained.**    Any decision by the District Court

11  concerning Plaintiff's claims for an award of reasonable statutory attorney's fees, litigation

12  expenses and costs shall be subject to review by the Ninth Circuit Court of Appeals.

13  **FULL CONSENT DECREE JUDGMENT AND ORDER:**

14      32.     This Consent Decree constitutes the entire agreement between the Parties on the

15  matters of Plaintiff's claims for injunctive relief, compensatory, statutory, bodily, and personal

16  injury damages, and no other statement, promise, or agreement, either written or oral, made by

17  any of the Parties or agents of any of the Parties, that is not contained in this written Full

18  Consent Decree Judgment and Order, shall be enforceable regarding the matters described

19  herein. This Consent Decree shall apply to and cover any and all claims, demands, actions and

20  causes of action that the Parties may have against one another with respect to the instant

21  lawsuit, or facts related to Plaintiff's lawsuit. Any other claims by the Parties against one

22  another that are not contained within this Consent Decree are hereby waived and released,

23  whether the same are known, unknown, or hereafter discovered or ascertained, and the

24  provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542

25  provides as follows:

26          A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
            WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
27          TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING
            THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE

28

Shimseck Law Offices
156 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

–8–

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Plaintiff's claim for an award of reasonable statutory attorney's fees, litigation expenses and costs is an exception to this paragraph.

**CONSENT DECREE BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

33.     The Parties agree and represent that they have entered into this Consent Decree voluntarily, under no duress, and wholly upon their own judgment, belief, and knowledge as to all matters related to this Consent Decree, after having received full advice from counsel.

34.     This Consent Decree shall be binding on Plaintiffs and Defendant and any successors in interest. During the period of this Consent Decree, the Parties have a duty to so notify all such successors in interest of the existence and terms of this Consent Decree during the period of the Court's jurisdiction of this Consent Decree.

**CONSENT TO JURISDICTION OF MAGISTRATE JUDGE:**

35.     In accordance with the provisions of Title 28, U.S.C. Section 636(c), each undersigned party in the above–captioned civil matter hereby voluntarily consents to United States Magistrate Judge to conduct any and all further proceedings in the case related to enforcement of this Consent Decree. Appeal from such enforcement orders shall be taken directly to the United States Court of Appeals for the Ninth Circuit. Pursuant to this stipulation, each undersigned party requests that this matter be assigned specifically to Magistrate Judge Gary S. Austin, who is already familiar with the case.

**JOINT PREPARATION AND SEVERABILITY:**

36.     This Consent Decree is deemed jointly prepared by all Parties and shall not be strictly construed against any party as its drafter. If any term of this Consent Decree is determined by any court to be unenforceable, the other terms of this Consent Decree shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

37.     Signatories on the behalf of the Parties represent that they are authorized to bind the Parties to this Consent Decree.

Olzinszek Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

— 9 —

**SIGNATORIES BIND PARTIES:**

38. This Consent Decree may be executed in counterpart signatures, and such signatures may be attached in counterparts, each of which shall be deemed an original, and which together shall constitute one and the same instrument. Such counterparts may be signed as faxed signatures, which shall have the same force and effect as original signatures.

Dated: December 3, 2012

_____
GENEVA LEMA

Dated: _____

MODESTO HOSPITALITY, LLC

By: _____

Officer's Title: _____

///

O'Hanrahan Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

— 10 —

**SIGNATORIES BIND PARTIES:**

38.   This Consent Decree may be executed in counterpart signatures, and such signatures may be attached in counterparts, each of which shall be deemed an original, and which together shall constitute one and the same instrument. Such counterparts may be signed as faxed signatures, which shall have the same force and effect as original signatures.

Dated: _____

_____
GENEVA LEMA

Dated: _12/3/2012_

_____
MODESTO HOSPITALITY, LLC

By: _____
Mohamed Thowfeek
Authorized Representative

Officer's Title:_____

///

1

**APPROVED AS TO FORM:**

2

Dated: November __, 2011                THIMESCH LAW OFFICES

3                                        TIMOTHY S. THIMESCH, ESQ.

4                                        /s/ Timothy S. Thimesch, Authorized Signed
                                         Attorneys for Plaintiff
5                                        GENEVA LEMA

6

Dated: November __, 2011                BASHAM LAW GROUP

7                                        GARY R. BASHAM
                                         AARON R. JACKSON
8

9                                        /s/ Gary Basham, Authorized Signed
                                         Attorneys for Defendant
                                         MODESTO HOSPITALITY LLC
10

11

12                                       **ORDER**

13

14      IT IS SO ORDERED. _____

15  _____

16  _____

17  _____

18  _____.

19  Date: _Dec 17, 2012_____        _____

20                                    HON. ANTHONY W. ISHII
                                      JUDGE OF U.S. DISTRICT COURT
21

22

23

24

25

26

27

28

# EXHIBIT 1

Consent Decree and Order: Exhibit 1
*Lema v. Modesto Hospitality, LLC., et al.*
USDC Eastern Dist. Case No. 1:10–CV–02018–AWI–GSA

GENEVA LEMA ("Plaintiff") and MODESTO HOSPITALITY, LLC. ("Defendant") hereby agree that the following corrective work and modification of policies (listed within the "Agreed Upon Correction" column) will be undertaken to eliminate alleged barriers at the Subject Property.

When the term "compliant" is used in connection with agreed upon corrections, all of the corrective work and modifications will be done in compliance with current standards and specifications for altered facilities of the Americans with Disabilities Accessibility Guidelines ("ADAAG") and California Code of Regulations, Title 24-2 ("Title 24-2"), as they exist at the time of the signing of this consent decree, subject to conventional building industry tolerances for field conditions and subject to technical infeasibility defenses.

When the term "maximum extent feasible" is used in connection with agreed upon corrections, it means that the corrections shall endeavor to comply with applicable accessibility standards. to the maximum extent possible, with the understanding that the nature of the existing facility may make it virtually impossible to achieve full and exact compliant in limited circumstances with those accessibility standards.

Nothing in this agreement should be construed as requiring corrective work or modifications beyond the requirements and specifications of the Americans with Disabilities Accessibility Guidelines ("ADAAG") and California Code of Regulations, Title 24-2 ("Title 24-2"), as they exist at the time of the signing of this consent decree.  No agreement exists as to remediation unless specifically stated within this Exhibit.

## ON SITE PARKING

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B01. | **Towing Away Signage at Lot Entrance.** The east entrance to the parking lot does not have a sign at the lot entrance warning against parking in accessible spots. The signage is required to notifying users where they may retrieve their towed vehicles.  Alternatively, this signage may be posted at the designated accessible spaces themselves, but isn't in the instant case. Under the code, the drive entrance for each parking lot on site, or, alternatively each accessible parking space on site, shall post a sign that is 17" by 22" in size with lettering not less than 1" high minimum, which clearly and conspicuously states the following: | Defendant agrees to provide a **compliant** sign at the lot entrance. |

| | | |
|---|---|---|
| | "Unauthorized vehicles parked in designated accessible spaces not displaying distinguishing placards or special license plates issued for persons with disabilities will be towed away at the owner's expense. Towed vehicles may be reclaimed at _ _ _ _ _ _ _ _ _ or by telephoning _ _ _ _ _ _ _ _ _." Blank spaces are to be filled in with appropriate information as a permanent part of the sign." (2007–CBC § 1129B.4.) This signage protects the availability of the parking spaces that the wheelchair user needs to be able to park in the lot and exit the vehicle by notifying and discouraging potential violators. When this signage–protection is not provided, it constitutes a barrier condition that thereby discriminates against wheelchair users and their specific disabilities by failing to protect the availability of the parking spaces that she needs to be able to park in the lot and exit the vehicle. Plaintiff has encountered this specific barrier within Defendant's lot, and has suffered deterrence–discrimination in this specific manner. She demands that Defendant provide the signage as required by the CBC. | |
| B02 | **Designated Accessible Space on North Side of Driveway – Posted Signage.** The parking space on the north side of the driveway has a sign at the end that is not centered on the space in violation of code. (2007–CBC §1129B.4.) This specific requirement helps differentiate the disabled parking space from other standard spaces and areas, and thereby helps protect against unauthorized use. When not met, the resulting condition constitutes a barrier that discriminates against wheelchair users. Users rely upon these protections to discourage violators and ensure their ability to lower their lift and transfer to and from their vehicle. When a violation occurs, the user is not able to use their space and/or can be trapped from returning. Further, without the protections, it is impossible for law enforcement to enforce the prohibition against parking in this space | Defendant has agreed to provide a total of two (2) **compliant** disabled on-site parking spaces. The location and placement of the two parking spaces is at the discretion of Defendant. Defendant will provide an accessible path of travel from the designated accessible parking spaces to the front entrance. |

| | | |
|---|---|---|
| | by people who are not eligible to use this amenity, because it fails to comply with the California Vehicle Code. Plaintiff has encountered this specific barrier within Defendant's lot, and suffered deterrence–risk–discrimination in this specific manner. She demands that Defendant center the signage as required by the CBC. | |
| B03 | **Designated Accessible Space on North Side of Driveway – Faded "No Parking" Signage in Unloading Zone.** This space on the north side of the driveway has the required No Parking sign in the unloading zone. However, it's faded and the protection is easy to miss. Under the code, the required configuration, striping, signage, clear area and other features must be maintained in working condition to ensure that they are readily accessible to and usable by persons with disabilities. (2007–CBC §1101B.3 and 28 C.F.R §36.211.) This requirement has added importance for the transitory parking environment, and the wear and tear experienced by its accessibility features. Access aisles are a frequent target for storage violations, and striping and signage must be maintained to help identify spaces. Plaintiff has encountered this specific barrier within Defendant's lot, and suffered deterrence–risk–discrimination in this specific manner. She demands that Defendant repaint and maintain the signage as required by the CBC and CFR. | See response to B02. |
| B04 | **Designated Accessible Space on North Side of Driveway – Length of Space.** The length of the space on the north side of the driveway is 15'– 3". Under the code, accessible parking spaces are required to be a minimum of 18 feet long. (2007–CBC §1129B.3(1).) This requirement ensures adequate space for the wheelchair user to park, transfer in and out of, move about, and access all portals of her vehicle. When this minimum requirement is not met, the resulting condition is a barrier that discriminates against the ready usability of the space. Plaintiff has encountered this | See response to B02. |

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 18 of 122

| | | |
|---|---|---|
| | specific barrier within Defendant's lot, and suffered deterrence–risk discrimination in this manner. She demands that Defendant restripe the space to at least the minimum length specified by the CBC. | |
| B05 | **Designated Accessible Space on North Side of Driveway – Tactile Dome Plate Size.** There is tactile warning between the base of the loading zone and the driveway has a width of the tactile domes of 24–1/2". This provides less than the 36 inch minimum wide visual and detectable warning specified by code to notify the wheelchair user that they are entering a drive aisle. (ADAAG §1133B.8.3; and ADAAG §4.29.5.) Plaintiff has encountered this specific barrier within Defendant's lot, and suffered deterrence–risk–discrimination in this specific manner. She demands that Defendant provide a proper tactical dome strip in conformance with the CBC and ADAAG. | See response to B02. |
| B06 | **Designated Accessible Space on North Side of Driveway – Cross–Slope.** There are non–compliant cross–slopes within this space. The cross slope at the top of the space is 2.3%, and 2.5% at the base. Designated accessible spaces and their access aisles are required to be level within 2%, as measured "in all directions." (2007–CBC §1129B.3(4); and ADAAG §4.6.3.) This requirement pertains to both ready usability and safety. It ensures, for example, that the wheelchair user has a steady and level area when transferring to and from their passenger seat, or when coming off the slope of their lift or ramp. When this requirement is not met, the space is not readily accessible and usable, and constitutes a barrier condition that discriminates by increasing the hazard and difficulty of performing a safe transfer to and from the vehicle. Plaintiff has encountered this specific barrier within Defendant's lot, and was discriminated against in this manner. She demands that Defendant renovate the area so that is level within 2% as required by the CBC and ADAAG requirements | See response to B02. |

| B07 | **Designated Accessible Space on North Side of Driveway – Unloading Zone – Cross–Slope.** There are non–compliant cross–slopes within the space's unloading zone. The slope in the center is 4.3 percent, the cross slope at that point is 2.6%. Slope across the tactile domes at the foot of the space is 2.6 percent. Like designated spaces, their adjacent unloading zones are also required to be level within 2%. (2007–CBC §1129B.3(4); and ADAAG §4.6.3.) This requirement pertains to both ready usability and safety. It ensures, for example, that the wheelchair user has a steady and level area when transferring to and from their passenger seat, or when coming off the slope of their lift or ramp. When this requirement is not met, the space is not readily accessible and usable, and constitutes a barrier condition that discriminates by increasing the hazard and difficulty of performing a safe transfer to and from the vehicle. Plaintiff has encountered this specific barrier within Defendant's lot, and was discriminated against in this manner. She demands that Defendant renovate the area so that is level within 2% as required by the CBC and ADAAG requirements. | See response to B02. |
| B08 | **Designated Accessible Spaces on South Side of Drive Aisle – Eastern "Van Accessible" Space – Posted Sign Not Centered.** The designated space one on the east side is the designated as van accessible. Its sign at the end of this space is not "centered" on the space in contravention of code, a violation that is replicated for the western space of this pair. (2007–CBC §1129B.4.) This specific requirement helps differentiate the disabled parking space from other standard spaces and areas, and thereby helps protect against unauthorized use. When not met, the resulting condition constitutes a barrier that discriminates against wheelchair users. Users rely upon these protections to discourage violators and ensure their ability to lower their lift and transfer to and from their vehicle. When a violation occurs, the user is not able to use their space and/or can be | See response to B02. |

| | | |
|---|---|---|
| | trapped from returning.  Further, without the protections, it is impossible for law enforcement to enforce the prohibition against parking in this space by people who are not eligible to use this amenity, because it fails to comply with the California Vehicle Code. Plaintiff has encountered this specific barrier within Defendant's lot, and suffered deterrence–risk–discrimination in this specific manner.  She demands that Defendant center the signage as required by the CBC. | |
| B09 | **Designated Accessible Spaces on South Side of Drive Aisle – $250 Fin Signage.** These two designated accessible spaces do not have the $250 sign at the end of them. Accessible parking spaces shall have a sign or additional language below the symbol of accessibility notifying "Minimum Fine $250". (2007–CBC  §1129B.4.)    This specific requirement help differentiate the disabled parking space from other standard spaces and areas.   They thereby help protect against unauthorized use.   When not met, the resulting condition constitutes a barrier that discriminates against wheelchair users. Users rely upon these protections to discourage violators and ensure their ability to lower their lift and transfer to and from their vehicle. When a violation occurs, the user is not able to use their space and/or can be trapped from returning.  Further, without the protections, it is impossible for law enforcement to enforce the prohibition against parking in this space by people who are not eligible to use this amenity, because it fails to comply with the California Vehicle Code.    Plaintiff has encountered this specific barrier within Defendant's lot, and suffered deterrence–risk–discrimination in this specific manner.   She demands that Defendant provide the minimum signage required by the CBC. | See response to B02. |
| B10 | **Designated Accessible Spaces on South Side of Drive Aisle – Width of the Unloading Zone.**    The width of the unloading zone between the white lines is | See response to B02. |

| | | |
|---|---|---|
| | only 7'– 4–1/2" between the blue lines, which is below the 8 foot minimum dimension specified by code. (2007–CBC §1129B.3(1); and ADAAG §§4.1.2(5)(a)–(b) and 4.6.3 (width).) This requirement ensures adequate space for the wheelchair user to park, transfer in and out of, move about, and access all portals of her vehicle. When this minimum requirement is not met, the resulting condition is a barrier that discriminates against the ready usability of the space. Plaintiff has encountered this specific barrier within Defendant's lot, and suffered deterrence–risk discrimination in this manner. She demands that Defendant restripe the space to at least the minimum length specified by the CBC and ADAAG. | |
| B11 | **Designated Accessible Spaces on South Side of Drive Aisle – Incorrect Outline Color.** The two spaces are outlined in blue and white lines, which is a condition that violates Code. (2007–CBC §1129B.3(1).) This specific requirement helps differentiate the disabled parking space from other unloading zones and areas. For example, those used for commercial delivery. They thereby help protect against unauthorized use. When not met, the resulting condition constitutes a barrier that discriminates against wheelchair users, and as further specified, supra in subparagraph (iii). Plaintiff has encountered this specific barrier–risk–deterrence within Defendant's lot, and suffered deterrence–discrimination in this specific manner. She demands that Defendant re–outline the space in conformance with the CBC. | See response to B02. |
| B12 | **Designated Accessible Spaces on South Side of Drive Aisle – Space Width.** The width of the van space is only 7'– 4–1/2", which is instead of the 14 foot minimum dimension specified by code. (2007–CBC §1129B.3(1) and ADAAG §4.6.3 (width).) This requirement ensures adequate space for the wheelchair user to park, transfer in and out of, move about, and access all portals of | See response to B02. |

| | | |
|---|---|---|
| | their vehicle.   When the minimum requirement is not met, the resulting condition is a barrier that discriminates against the ready usability of the space.   Plaintiff has encountered this specific barrier within Defendant's lot, and was discriminated against in this manner.   She demands that Defendant re–stripe the space in conformance with the CBC and ADAAG size requirements. | |
| B13 | **Designated Accessible Spaces on South Side of Drive Aisle –Slope.**  The slope at the bottom of the van accessible space varies between 2.0% and 7.3%.  The cross slope at the base of the west space of this pair is 2.3% at the base.  Designated accessible spaces and their access aisles are required to be level.  This means the maximum slope of the parking surface shall not exceed 2%, as measured "in all directions." (2007–CBC §1129B.3(4); and ADAAG §4.6.3.)  This requirement pertains to both ready usability and safety.  It ensures, for example, that the wheelchair user has a steady and level area when transferring to and from their passenger seat, or when coming off the slope of their lift or ramp.   When this requirement is not met, the space is not readily accessible and usable, and constitutes a barrier condition that discriminates by increasing the hazard and difficulty of performing a safe transfer to and from the vehicle.   Plaintiff has encountered this specific barrier within Defendant's lot, and was discriminated against in this manner.  She demands that Defendant renovate the grade of the space in conformance with the CBC and ADAAG slope requirements. | See response to B02. |
| B14 | **Designated Accessible Spaces on South Side of Drive Aisle – Designated "Van Accessible" Space – Unloading Zone Slope.**  The slope in the unloading zone in center of the zone at the base is 2.2%, 3.6% in the center and 4.1% directed towards the drain.  Designated accessible spaces and their access aisles are required to be level.   This means the maximum slope of the parking surface shall not exceed 2%, as measured "in | See response to B02. |

| | | |
|---|---|---|
| | all directions." (2007–CBC §1129B.3(4); and ADAAG §4.6.3.) This requirement pertains to both ready usability and safety. It ensures, for example, that the wheelchair user has a steady and level area when transferring to and from their passenger seat, or when coming off the slope of their lift or ramp. When this requirement is not met, the space is not readily accessible and usable, and constitutes a barrier condition that discriminates by increasing the hazard and difficulty of performing a safe transfer to and from the vehicle. Plaintiff has encountered this specific barrier within Defendant's lot, and was discriminated against in this manner. She demands that Defendant renovate the grade of the unloading zone in conformance with the CBC and ADAAG slope requirements. | |
| B15 | **Designated Accessible Spaces on South Side of Drive Aisle – Designated "Van Accessible" Space – Wheel Stops – Restricted Length of Unloading Zone.** There are two wheel stops set in the middle of the unloading zone for the van accessible space. That unloading zone cuts off the clear length of the unloading zone at 102–1/2", instead of 18' min. specified by code. (2007–CBC §1129B.3(1); and ADAAG §§4.1.2(5)(a)–(b) and 4.6.3 (width).) This requirements ensure adequate space for the wheelchair user to park, transfer in and out of, move about, and access all portals of their vehicle. When the minimum requirements are not met, the resulting condition is a barrier that discriminates against the ready usability of the space and/or can result in a trapping hazard for disabled users. Plaintiff has encountered this specific barrier within Defendant's lot, and was discriminated against in this manner. She demands that Defendant reposition the wheel stops outside the unloading zone to conform to CBC and ADAAG requirements. | See response to B02. |

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 24 of 122

**LOBBY AMENITIES**

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| **B37** | **Walk Off Mats.** There are walk–off mats at both sets of doors to the vestibule, the outer vestibule door and the inner vestibule door that are not attached to the floor. All ground and floor surfaces along an accessible route are required to be stable, firm and slip resistant. (2007–CBC §1124B.1 and ADAAG §4.5.1.) However, these walk–off mats buckle when a wheelchair turns upon them. This condition denies wheelchair users with readily accessible facilities, and causes frustration as well as fatigue, both physically and mechanically. Plaintiff's ability to obtain ready access is affected by this condition. She demands that the mats be firmly attached in conformance with CBC and ADAAG requirements. | Defendant agrees to provide a stable, firm, slip-resistant mat. |
| **B38** | **Guest Microwave – Height of Controls & Reach Over and Obstruction.** There's a counter at the east end of the check–in counter that has a microwave on it that is used by the public to warm items and cook popcorn. The height of the counter is 47–3/4" above the finished floor and there is no lower section. The inside counter height is set at 36–1/2" and must be reached across to use the device from the inside of the counter. There is a small table constricting the path of travel back to the microwave to 29–3/4 from the face of the cabinets to the face of the counter. The wall projects off at a 30 degree angle, and the clear floor space in front of the microwave on the inside of the counter has a width of 24–1/4 inches. | Defendant will remove this microwave. |
| **B39** | **Registration Counter.** The front desk registration counter, at which persons transact and handle documents, is approximately 48 1/2 inches high and without the lower section or lowered counter required by code. (2007–CBC §1122B.5; and ADAAG §7.2(2).) There is | Defendant will provide a **compliant** lowered section of the registration counter. |

| | | |
|---|---|---|
| | no lower section, no pull out on the lobby side and there is no indication that there is a segregated "lower" counter inside the little store at the end of the main check–in counter.  This barrier condition denies the disabled the lowered transaction counter they need for accessing the work surface from their wheelchair, and the notification of the existence of a separate counter.  Plaintiff encountered this specific barrier and was denied access in this manner.  She demands that Defendant provide compliant integrated counter facilities meeting the requirements of the CBC and ADAAG. | |
| **B40** | **Gift Shop – Counter.**  In the gift shop there is a window between the check–in work area and the gift shop that is a sales counter, and for handling documents, such as credit–card slips for signature.  The height of the top at of the counter is 35–1/2, which exceeds the 34 inch maximum specified by code.    The knee space under the counter projects back under the counter 10–7/8", which is less than the 19 inch minimum specified by code.  (2007–CBC §1110B.1.3; cf.  ADAAG §§7.2 and 7.3.)  This barrier condition denies the disabled the lowered transaction counter they need for accessing the work surface from their wheelchair.  Plaintiff herself has encountered these barrier conditions.    She demands that Defendant provide proper counter height with knee space depth in conformance with the CBC and ADAAG requirements. | This counter shall not be modified, but see response to B39. |

## BUSINESS CENTER

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| **B41** | **Entrance Door – Key Lock Requiring GPT to Operate.**  Access into the business center is through the use of the same card key that unlocks the guest room doors, which require improper dextral movements of grasping pinching and twisting of the wrist, which    are    all    required–dextral–actions | Defendant will provide a card–key attached to a key ring (through a hole punched at the top of the card), which will allow the user to slip the ring between the upper part of fingers and avoid having to perform the prohibited–required– |

| | | |
|---|---|---|
| | prohibited by code. (2007–CBC §§ 1133B.2.5.2 and 1115B.3.1(4)(4.5); and ADAAG §4.13.9.) This barrier discriminates against wheelchair users, and those with reach range and dextral limitations, by forcing the performance of an action requiring great difficulty. Plaintiff, who has arthritis, has encountered this specific barrier condition and was affected in this manner. She demands that Defendant provide compliant door hardware in conformance with CBC and ADAAG requirements. Note: Another simple solution is to provide a card–key attached to a key ring (through a hole punched at the top of the card). This allows the user to slip the ring between the upper part of fingers and avoid having to perform the prohibited–required–dextral movements. | dextral movements. |
| B42 | **Entrance Door – Height of Push Plate.** The height of the push plate on the east door is 9 inches to the bottom edge of the molding. The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007–CBC §1113A.5.) Plaintiff has encountered this barrier–risk condition. Plaintiff demands that Defendant provide a 10 inch kick plate or other compliant surface in conformance with CBC requirements. | Defendant shall provide a **compliant** smooth uninterrupted service. |
| B43 | **Work Surface – Reach Over an Obstruction and Knee Space.** On the interior of the business center there is a work counter with a paper puncher, stapler, pens, et cetera. The height of that counter is 34–1/4". The distance back across the top is 23". The counter surface is set at a height of 29–1/2. The knee space under the counter is 27–3/4. The distance that it projects back into the counter is 23 inches. The height of the front approach printer is 49–1/4" above the finished floor. | Defendant will relocate items within reach range. Remainder is compliant with ADAAG 4.32. |

**CLUB MAX**

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| **B44** | **Ramp Serving Men's and Women's Restrooms in Northwest Corner of Lobby and Club Max – Missing Landing & Handrail Not Firmly Attached.** The handrails turn 90 degrees along the run of the ramp at a distance of 19–1/2" from the base, necessitating a change of direction along the run without an intermediate landing provided. The distance from the overhanging wall to the center line of the handrail above is approximately 4 inches. On the east side of the ramp, near the middle, there's a 90 degree change in direction and the handrail lifts up and down approximately 5". This ramp handrail is not stable as required by the Code. | Defendant shall solely tighten the brackets on the handrail to ensure that it is firmly attached. |
| **B45** | **Entry Door Into Max's.** The push plate is set at a height of 9–1/4" above the finished floor. The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007–CBC §1113A.5.) If encountered, this condition would cause Plaintiff a distinct barrier–risk. Plaintiff demands that Defendant provide a 10 inch kick plate or other compliant surface in conformance with CBC requirements. | Defendant will provide a **compliant** smooth uninterrupted service. |
| **B46** | **Club Max Entry–Stairs – Contrasting Stripe.** The two stairs into the room do not have contrasting stripes on them. | Defendant will provide **compliant** contrasting stripes. |
| **B47** | **Club Max Entry–Stairs – Handrails.** The height of the handrail above the riser is 30–1/2 on center. The diameter of the handrail is 2". The extension of the handrail on the west side is 12" at the bottom of the stairs The center handrail has an extension at the bottom the of 12". Note. These handrails have a newel post at the top and bottom. | **These handrails shall not be modified, but see response to B48.** |

| | | The handrail on the north side of the stair has an extension of 14 at the bottom. | |
|---|---|---|---|
| **B48** | **Club Max – Ramp – Handrails.** The diameter of the handrail is 2". The graspable portion of the handrail on the west side of the ramp is interrupted by the support elements, the vertical support. Height of the grab bar is too high at 42" above the finished surface. | Defendant will provide **compliant** handrails. | |
| **B49** | **Club Max – Ramp – Lower Landing.** The ramp has a level landing at the bottom of approximately 43" between the point where landing reaches 2% and the nearest obstruction. The edge of the bottom landing is approximately 3–1/8" above the finished floor level and it flares down to grade on the outside edge of the ramp landing, which has a slope of 22.7%. The net effect of these conditions is to deny wheelchair users the minimum 60 inch landing required by code to provide a safe place to come to rest and maneuver at the bottom of the ramp. (2007–CBC §1133B.5 et seq.; and ADAAG §4.8 et seq.) The deficiency is exacerbated by the hazardous drop off condition to the side, which is not protected by edge protection or wheel guides. Plaintiff has knowledge of these barrier–risk conditions that would significantly reduce her ready and safe access to these facilities. She demands that Defendant reconfigure the lower ramp landing to comply with CBC and ADAAG requirements. | Defendant will remove any obstructions on the landing. | |
| **B50** | **Club Max – Full Service Bar – Counter Height.** The west end of the bar the service station that has a height of 37" and knee space has a projection back underneath of 6–1/2". At the east end, the height of the service station is 37" and knee space has a projection back underneath of 6–1/2". This condition is typical for the full length of the bar, and no lowered section or lowered accessible counter is provided, in violation of code. (2007–CBC §1104B.5.4(4); and ADAAG 5.2.) This barrier discriminates against Plaintiff's specific disabilities by | Defendant will provide an adjacent accessible table where bar service will be provided. Employees will be trained to use the adjacent table to provide services to disabled persons whenever the bar is open. | |

| | | |
|---|---|---|
| | making it impossible to sit at the counter with or without a companion, and mandates that the wheelchair user sit alone at a table. . Plaintiff has knowledge of these barrier–risk conditions that would exclude her from the bar counter.  She demands that Defendant provide a lower section at the dining counter that is in compliance with CBC/ADAAG requirements. | |
| **B51** | **Club Max – Exterior Patio Door – Strike Edge Clearance.** The strike edge clearance on the outside of the door is 2 inches, which is significantly below the 24 inch minimum specified by code.  The door is controlled by a closer and latch.  The strike edge clearance on the interior push side of the door is 3–1/2" approximately, which is significantly below the 12 inch minimum specified by code. (2007–CBC §1133B.2.4.3; and ADAAG at §4.13.6 & Figure 25.)  This barrier discriminates against wheelchair users on both sides of the door by making it impossible to position the wheelchair a location where the door can swing upon without striking the chair, and makes it much more difficult, if not impossible, to go through the door independently.  Plaintiff is deterred from returning by the existence of this barrier. She demands that Defendants reconfigure the entry to provide the minimum required strike edge clearances, or provide an automatic door opener, in full conformance with CBC and ADAAG requirements. | Defendant will install an automatic door opener at this door. |
| **B52** | **Club Max – Exterior Patio Door – Walk Off Mats.**  There are walk–off mats on the interior and exterior of the bar door in this location, which are not firmly attached.  This contravenes code.  All ground and floor surfaces along an accessible route are required to be stable, firm and slip resistant. (2007–CBC §1124B.1 and ADAAG §4.5.1.)  However, these mats buckle when a wheelchair turns on the mat.  This condition denies wheelchair users with readily accessible facilities, and causes frustration as | See response to B37. |

| | | |
|---|---|---|
| | well as fatigue, both physically and mechanically. If she uses this facility, Plaintiff's ability to obtain ready access would be affected by this condition. She demands that Defendant firmly attach these mats in conformance with CBC and ADAAG requirements. | |
| **B53** | **Club Max – Exterior Patio – Tables.** There are umbrella round tables on this patio that serve both Club Max and the adjacent restaurant. The tables have a knee space under the table is 26–1/2, which is below the 28 inch minimum specified by code. The projection of the knee space back under the table top it's 6", which is below the 19 inch minimum specified by code   The distance between the legs is 24–3/4 inches, which is below the 36 inch minimum specified by code. (2007–CBC §1122B.3; and ADAAG §4.32.3.)  These are typical for the larger tables, all of which are not usable by persons using wheelchairs. For the smaller diameter tables in the area, the height of the knee space underneath is 25–1/2" high and the projection back under the table is only 1". The distance between the legs is only 17–1/2 inches. These barriers discriminate against Plaintiff's specific disabilities by failing to provide a table that has equivalent usability to those provided to able–bodied patrons who can position themselves under the table in an appropriate manner. Plaintiff demands that Defendant provide at least one accessible table on the patio in conformance with CBC/ADAAG requirements, ensuring that none of such designated accessible tables has a pedestal, pedestal base or other obstruction located within the 19 inch minimum depth required for knee space dimension. | Defendant will provide a minimum of five percent (5%) **compliant** accessible seating in the exterior patio area. |
| **B54** | **Club Max's – Seating Around Interior of Room.** There's a seating along the southwest corner of the room, which is up a 7–1/2" step and is set approximately 16–1/2" above the top of the step, and without a vertical means of access, which violates code for | Defendant will solely provide a minimum of five percent (5%) **compliant** accessible seating within Club Max. No additional ramps shall be provided. |

|  |  |  |
|---|---|---|
| | this purely architectural feature. (2007–CBC §§ 1111B.3 and 1124A, 1104B.4.3 and 1132B.2; and ADAAG 4.1.3, and 4.3.2 (3).) The absence of a vertical means of access serves to entirely exclude disabled persons from this seating area. If encountered, Plaintiff would be entirely excluded. She demands that Defendant provide a vertical means of access as required by the CBC and ADAAG. | |

## MAIN FULL SERVICE BAR OFF MAIN LOBBY AND MAX'S RESTAURANT

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B55 | **Drink Counter.** There's a drink counter adjacent to the top of the bar that has a height of 41–1/4" and without the required lower counter or section. (2007–CBC §1104B.5(4); and ADAAG §5.2.) This barrier discriminates against Plaintiff's specific disabilities by making it impossible to sit at the counter with or without a companion, and mandates that the wheelchair user sit alone at a table. Plaintiff demands that Defendant provide a lower section at the dining counter that is in compliance with CBC/ADAAG requirements. | Defendant will provide a **compliant** lowered section of the drink counter. |
| B56 | **Bar – Tables.** The tables in this bar, which also serves food from the adjacent restaurant, are unusable by persons who use wheelchairs. The extension of the knee space under a typical four person round table is only approximately 13", which is significantly below the 19 inch minimum specified by code The two person round table has knee space that projects back approximately 7–1/2" from the front face of the fixture. The raised two person tables are set at a height of 42–1/2" above the finished floor, which is significantly in excess of the 34 inch maximum specified by code. | Defendant will provide a minimum of five percent (5%) **compliant** seating in the bar area. |

| | | |
|---|---|---|
| | Finally, for the granite top table, the knee space that projects back under the table approximately 3" and the distance between the legs is about 13–1/2". (2007–CBC §1122B.3; and ADAAG §4.32.3.) These tables discriminate against Plaintiff's specific disabilities by failing to provide them a surface with equivalent usability to those provided to able–bodied patrons who can position themselves under the table in an appropriate manner. Plaintiff demands that Defendant provide at least one accessible table in the bar in conformance with CBC/ADAAG requirements, ensuring that none of such designated accessible tables has a pedestal, pedestal base or other obstruction located within the 19 inch minimum depth required for knee space dimension. | |
| **B57** | **Restaurant – Tables.** The tables in the restaurant are unusable by persons who use wheelchairs; the typical 4 person table has knee space that extends back underneath the table 8–1/2"; the typical 2 person table has knee space that extends back underneath the table 6"; and the typical round table has knee space that extends back underneath the table 6". Each of these conditions fail to provide the minimum 19 inch knee space depth required by code. (2007–CBC §1122B.3; and ADAAG §4.32.3.) These tables discriminate against Plaintiff's specific disabilities by failing to provide them a surface with equivalent usability to those provided to able–bodied patrons who can position themselves under the table in an appropriate manner. Plaintiff demands that Defendant provide at least one accessible table in the bar in conformance with CBC/ADAAG requirements, ensuring that none of such designated accessible tables has a pedestal, pedestal base or other obstruction located within the 19 inch minimum depth required for knee space dimension. | Defendant will provide a minimum of five percent (5%) **compliant** accessible seating in the restaurant. |
| **B58** | **Max's Restaurant – Doors Serving Patio.** The thresholds for these doors have a slope | A threshold extension shall be provided, such as a Metal |

| | | |
|---|---|---|
| | of 12.2%, for a vertical rise of approximately 1–1/2. This exceeds the ¼ inch maximum, or ½ inch maximum beveled permitted by code. (2007–CBC; and ADAAG §1133B.2.4.1; and ADAAG §4.13.8.) These conditions make it extremely difficult to impossible for wheelchair users to cross in and out of the patio. Plaintiff encountered these barriers and was denied full and equal access in this manner. She demands that Defendant provide compliant entrance facilities meeting the requirements of the CBC and ADAAG. | Pemko extension. |
| B59 | **Max's Restaurant – Buffet – Improper Height and Reaches Over an Obstruction.** The Buffet and its service amenities cannot be accessed by persons who use wheelchairs. The top of the buffet counter is set at a height of 37–3/4" above the finished floor. The width of this counter is 36–1/2. The maximum reach across the obstruction of the buffet counter is 18–1/4" to three centerline of the steam tables. The containers on the steam tables are set at a typical height of 47" above the finished floor. | Defendant will develop a policy practice and procedure of placing items within reach range. Defendant may additionally purchase modified utensils providing for additional reach, if available. |
| B60 | **Max's Restaurant – Buffet – Path of Travel.** The aisle along the backside of the buffet table is approximately 29" clear, which is below the 36 inch minimum required by code. | All food and drink items shall be available on either side of the path of travel. |

**PUBLIC RESTROOMS –Women's Restroom Near Club Max.**

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B78 | **Women's RR at Club Max – Entry Door – ADAAG Signage.** There's no ADA signage on the exterior of the door. (ADAAG §4.30.6.) This barrier discriminates against all persons with disabilities by failing to notify the individual that an accessible restroom facility is available to them. Plaintiff demands that Defendant provide proper signage in conformance with | Defendant will provide a **compliant** sign on the exterior of the door. |

| | | |
|---|---|---|
| | CBC/ADAAG requirements. | |
| B80 | **Women's RR at Club Max – Entry Door – Pull Side Strike Edge Clearance – Depth.** The landing within the strike edge clearance on the exterior side of the door is 53–1/2" between the face of the closed door and the planter, which is less than the 60 inch minimum required by code to provide wheelchair users with the space required to position themselves and their chair outside the swing when operating the door. (2007-CBC §§ 1127A.1 and 1127A.2; and ADAAG §§ 4.13 and 4.22.2.) Plaintiff demands that Defendants move the planter to provide a door landing that complies with CBC and ADAAG requirements, and adopt a written policy, backed by employee training, to prevent inappropriate obstructions of door landings as well as clear floor spaces in general. | Defendant will move the planter. Defendant will also adopt a written policy, backed by employee training, to prevent inappropriate obstructions of door landings as well as clear floor spaces in general. |
| B81 | **Women's RR at Club Max – Entry Door – Operational Force.** The push pressure required to open the door is 6 pounds of pressure, which exceeds the 5 lbs. maximum permitted by code, and is typical. (2007-CBC §1133B.2.5.) This barrier discriminates against persons with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance. On information and belief, Plaintiff encountered this condition and was affected in this manner. Plaintiff demands that Defendants adjust this entrance so that the amount of push pressure required to operate is no more than 5 lbs. | The door pressure will be modified during routine maintenance. Defendant will also adopt a policy, practice, and procedure requiring that push pressure be checked and adjusted during routine maintenance. |
| B82 | **Women's RR at Club Max – Sink – Counter Mounting Height.** The height of the sink counter is 35–1/4" above the floor, exceeding the 34 inch maximum height | Defendant will provide a **compliant** counter height, with regard to at least one sink. |

| | | |
|---|---|---|
| | specified by code.  (2010-CBC Figure 11B-1D; and ADA Stds at Figure 31.)  This dimension is important to provide ready access to wheelchair users who must reach over the counter to wash their hands <u>within</u> the sink, and avoid spillage.  Plaintiff has encountered this barrier and was denied the ready access to which she was entitled.  She demands that Defendant reposition the counter to be at or below the compliant maximum height in conformance with the CBC and ADAAG requirements | |
| **B84** | **Women's RR at Club Max – Insulation.** The hot water feed is not wrapped with insulation.    This  code  requirement  is designed to help prevent burns on the legs of wheelchair       users.       (2007–CBC §1115B.4.3(4); and ADAAG §4.19.4.)  This is a particular hazard for wheelchair users who lack feeling in their legs.  Plaintiff has encountered this barrier–risk.  She demands that Defendants insulate the feed per CBC and ADAAG requirements. | Insulation is already in place; however, Defendant will adjust and extend insulation as needed to ensure compliant insulation. |
| **B85** | **Women's RR at Club Max – Sink – Soap Dispenser – Required Reach Back Across an Obstruction.**   The depth of the sink counter is 23–1/4.   The slope dispenser is set back a distance of 18–1/4. | Defendant   will   modify   soap dispenser, or provide a new one. |
| **B86** | **Women's  RR  at  Club  Max  –  Sink  – Mirror – Mounting Height.   The height above the surface for the mirror is 41–3/4"** above the floor.   This exceeds the 40 inch maximum AFF permitted by code.  (CBC (Aug. 09 rev.) §1115B.8.1.1; and ADAAG 4.19.6.)  This added height makes it difficult to impossible for the wheelchair user, who is seated low, to use the mirror in a normal manner.     Plaintiff  has  encountered  this particular barrier condition and was denied access in this manner.   She demands that Defendant  provide  a  compliant  mirror meeting the requirements of the CBC and ADAAG. | Defendant   will   provide   a **compliant** mirror height, with regard to at least one sink. |
| **B87** | **Women's  RR  at  Club  Max  –  Sink  – Kleenex Dispenser.**  The Kleenex dispenser | Defendant will modify kleenex dispenser, or provide a new one. |

| | | |
|---|---|---|
| | at east side of the counter is 56–1/4" on center above the floor. | |
| **B88** | **Women's RR at Club Max – Tampon Dispenser – GPT Operation.** The controls for the tampon\dispenser require grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | Defendant will modify or remove the tampon dispenser. |
| **B90** | **Women's RR at Club Max – Baby Changing Table – Work Surface Height.** The height of the baby changing table in the folded out position is 37–1/4" above the floor and it projects out a distance of 35". The distance from the end of the table to the stall wall, the opposite wall, is 9¼ –11¼ inches. | Defendant will move the baby changing table into the ADA bathroom, and will adjust its height so that the folded out position does not exceed 34" inches above the finished floor when opened. |
| **B91** | **Women's RR at Club Max – Path of Travel Back to Accessible Stall.** The width of the corridor back to the accessible stall is 40" wide, which is below the 44 inch minimum specified by code. | See response to B88 and B90. |
| **B93** | **Women's RR at Club Max – Accessible Stall – Coat Hook – Mounting Height.** The height of the hooks on the back of the door is 48–3/4 at the bottom and the top is 65–1/2", which exceeds the 44 inch maximum permitted by code. This reduces the ready usability of the coat hook in a confined and sanitary environment. Plaintiff demands that Defendant remount the coat hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | Defendant will provide a **compliant** coat hook. |
| **B95** | **Women's RR at Club Max – Accessible Stall – Sanitary Seat Cover Dispenser – Mounting Height.** The center-line height of | Defendant will provide a **compliant** seat-cover dispenser. |

| | | |
|---|---|---|
| | the sanitary seat cover dispenser is 41–1/2 inches on center, which exceeds the 40 inch maximum specified by code.   (2010-CBC §1115B.8.3 and ADAAG §4.27.3, 4.2.5&6.) This maximum height is important to provide wheelchair users ready reach-range access from their seated position.   Plaintiff encountered this particular barrier and was denied ready access in this manner.   She demands that Defendants lower the dispenser in conformance with CBC and ADAAG requirements. | |
| **B96** | **Women's RR at Club Max – Accessible Stall – Toilet – Flush Valve.**   The flush valve for the toilet is on the narrow side of the fixture instead of the wide-side position required   by   code.     (2007-CBC §1127A.2.3(2) and ADAAG §4.16.5.)   This condition discriminates against wheelchair users, making it difficult to impossible for them to obtain ready access to the control. Plaintiff believes she has encountered this barrier and was affect in this manner.   She demands that Defendant relocate the flush control in conformance with CBC/ADAAG requirements. | Defendant will add an auto-flush system. |
| **B97** | **Women's RR at Club Max – Accessible Stall – Toilet – Centerline Dimension.** The distance from the wall beside the toilet to the centerline of the toilet is approximately 18–1/2, which does not conform to the 18-inch exact centerline dimension specified by code. (2010-CBC §1115B.4.1(1); and ADAAG 4.17.3 and Fig. 30.) This accurate-dimension provides wheelchair users with a predictable built environment and a learned-leverage point for accomplishing a weighted and partially blind transfer. It is one of the most important specified dimensions under the code for avoiding hazard.   Plaintiff has encountered this barrier-risk and was denied ready access in this manner.   She demands that Defendant remount the toilet to the exact specified dimension to conform to code, or provide a ½-inch backer-board behind the side grab bar. | Defendant   will   provide   a **compliant**   centerline   dimension. (Please note, compliance may be reached by providing a ½-inch backer-board behind the side grab bar.) |

| | | |
|---|---|---|
| B98 | **Women's RR at Club Max – Accessible Stall – Toilet – Side Grab Bar – Projection.**   The distance from the wall behind the toilet to the leading edge of the side grab bar is 48–1/2, which is less than the 54 inch minimum required by the code. (ADAAG §4.17.6 and Figure 30.)  It also projects less than the 24 inch minimum projection required by the code. (2007–CBC §1115B.4.1(3)(3.1).)    This barrier discriminates against wheelchair users by reducing the usability and effectiveness of the grab bar in getting onto and off the fixture.    Plaintiff has encountered this particular barrier condition and was denied access in this manner.   She demands that Defendant reposition the grab bar so that it projects appropriately in front of the toilet in conformance with CBC and ADAAG requirements. | Defendant will provide a **compliant** side grab bar. |
| B99 | **Women's RR at Club Max – Accessible Stall – Toilet – Side Grab Bar – Knuckle Space.**  The knuckle space for the side grab bar is 1–1/4, which is instead of the exact 1½ inch dimension required by code to provide the user a predictable surface behind the grab bar from which to leverage the back of the hand while making a dead weight transfer. (2007–CBC §1115B.7.1; and ADAAG §4.26.2.)   This is a safety hazard.  Plaintiff believes has encountered this barrier within this  particular room, or within other designated accessible rooms at the hotel, and that she was denied full and equal access in this manner. She demands that Defendants remount the bar to provide compliant knuckle space meeting the requirements of the CBC and ADAAG. | Defendant will provide a **compliant** side grab bar. |
| B100 | **Women's RR at Club Max – Accessible Stall – Toilet – Side Grab Bar – Mounting Height.**   The mounting height of the side grab bar is 32–1/2, which does not conform to the 33 inch exact on-center dimension specified by Title 24. (2010-CBC §1115B.7 and Figure 11B-1A.)   The code-specified height is the optimal position for leveraging | Defendant will provide a **compliant** side grab bar. |

| | | |
|---|---|---|
| | a transfer, and provides the wheelchair user with predictability in the built environment, and thereby helps in avoiding hazard. Plaintiff has encountered this particular barrier and was suffered this barrier-risk in this manner.  She demands that Defendants remount the grab bar to conform to the CBC. | |
| **B101** | **Women's RR at Club Max – Accessible Stall – Toilet – Rear Grab Bar – Position.** The distance from the wall beside the toilet to the leading edge of the grab bar is 43–1/2, to the interior edge of the grab bar, 7–1/2, which means the interior end of the grab bar is mounted too far from the corner, in contravention of code.  (ADAAG §§4.16.4 and 4.26, and Fig. 29.)  This condition limits the usable length of the grab bar in relation to the toilet, and the leverage the wheelchair user may employ in making a transfer. Plaintiff has encountered this condition and was affected in this manner.  She demands that Defendant remount the grab bar in conformance with this ADAAG requirement. | Defendant will provide a **compliant** rear grab bar. |

**PUBLIC RESTROOMS –Women's Restroom Near Club Max.**

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B104 | **Drinking Fountain Near Women's RR at Club Max**—Hi-Low Type.  This a low type foundation only and no high fountain is available, in violation of Plaintiff's semi-ambulatory access rights. | A paper cup dispenser will be provided. |
| B105 | **Women's RR at Conference Area – Entry Door – ADAAG Signage.**  There's no ADA signage on the strike edge of the door. (ADAAG §4.30.6.)  This barrier discriminates against all persons with disabilities by failing to notify the individual that an accessible restroom facility is available to them.  Plaintiff demands that Defendant provide proper signage in conformance with CBC/ADAAG | Defendant will provide a **compliant** sign on the strike edge of the door. |

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 40 of 122

| | | |
|---|---|---|
| | requirements. | |
| B107 | **Women's RR at Conference – Entry Door – Operational Force.** The push pressure required to open the door is 13 pounds which exceeds the 5 lbs. maximum permitted by code, and is typical. (2007-CBC §1133B.2.5.) This barrier discriminates against persons with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance. On information and belief, Plaintiff encountered this condition and was affected in this manner. Plaintiff demands that Defendants adjust this entrance so that the amount of push pressure required to operate is no more than 5 lbs. | The door pressure will be modified during routine maintenance. Defendant will also adopt a policy, practice, and procedure requiring that push pressure be checked and adjusted during routine maintenance. |
| B110 | **Women's RR at Conference – Sink – Mounting Height.** Height of the sink is 35–1/4 above the finished floor, exceeding the 34 inch maximum height specified by code. (2010-CBC Figure 11B-1D; and ADA Stds at Figure 31.) This dimension is important to provide ready access to wheelchair users who must reach over the counter to wash their hands <u>within</u> the sink, and avoid spillage. Plaintiff has encountered this barrier and was denied the ready access to which she was entitled. She demands that Defendant reposition the counter to be at or below the compliant maximum height in conformance with the CBC and ADAAG requirements. | Defendant will provide a **compliant** counter height, with regard to at least one sink. |
| B112 | **Women's RR at Conference – Sink – Mirror Mounting Height.** The mirror is set at a height of 41–1/2" above the finished floor. This exceeds the 40 inch maximum AFF permitted by code. (CBC (Aug. 09 rev.) §1115B.8.1.1; and ADAAG 4.19.6.) This added height makes it difficult to | Defendant will provide a **compliant** mirror height, with regard to at least one sink. |

| | | |
|---|---|---|
| | impossible for the wheelchair user, who is seated low, to use the mirror in a normal manner. Plaintiff has encountered this particular barrier and was denied ready access in this manner. She demands that Defendant provide a compliant mirror meeting the requirements of the CBC and ADAAG. | |
| B113 | **Women's RR at Conference – Soap Dispenser.** The soap dispenser is set at a height of 53–1/2" above the finished floor. | Defendant will modify the soap dispenser, or provide a new one. |
| B114 | **Women's RR at Conference – Kleenex Dispenser.** The height of the Kleenex dispenser above the counter is 55" on center above the finished floor. | Defendant will modify the Kleenex dispenser, or provide a new one. |
| B115 | **Women's RR at Conference – Baby Changing Table – Surface Height.** Baby changing table is set at a height in its folded out position 37–1/2" above the finished floor. | Defendant will modify the surface height of the baby changing table so that it does not exceed 34" inches above the floor. |
| B116 | **Women's RR at Conference – Sanitary Napkin Dispenser – GPT Operation.** The operable mechanism requires grasping, pinching, twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | Defendant will modify or remove the sanitary napkin dispenser. |
| B117 | **Women's RR at Conference – 2nd Sanitary Napkin Dispenser – GPT Operation.** Just outside the accessible stall, there is a second sanitary napkin dispenser that has operable controls grasping, pinching, and twisting of the wrist. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | Defendant will modify or remove the sanitary napkin dispenser. |

| B118 | **Women's RR at Conference – Accessible Stall – Closer.** This stall door has a closer on it, which only partially closes the door. | Defendant will lubricate and/or repair the door closer. |
|---|---|---|
| B119 | **Women's RR at Conference – Accessible Stall – Coat Hook.** The coat hooks on the interior side of the accessible stall door are set at a height of 65–1/4" and 48–1/4" above the finished floor, which exceeds the 44 inch maximum permitted by code. This reduces the ready usability of the coat hook in a confined and sanitary environment. Plaintiff demands that Defendant remount the coat hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | Defendant will provide a compliant coat hook. |
| B121 | **Women's RR at Conference – Accessible Stall – Toilet – Flush Valve Location.** The flush valve is set on the narrow side of the toilet stall instead of the wide-side position required by code. (2007-CBC §1127A.2.3(2) and ADAAG §4.16.5.) This condition discriminates against wheelchair users, making it difficult to impossible for them to obtain ready access to the control. Plaintiff believes she has encountered this barrier and was affect in this manner. She demands that Defendant relocate the flush control in conformance with CBC/ADAAG requirements. | Defendant will add an auto-flush system. |
| B122 | **Women's RR at Conference – Accessible Stall – Toilet – Grab Bar – Projection.** The distance from the wall behind the toilet to the leading edge of the side grab bar is 49–3/4, which is less than the 54 inch minimum required by the code. (ADAAG §4.17.6 and Figure 30.) It also projects less than the 24 inch minimum projection required by the code. (2007–CBC §1115B.4.1(3)(3.1).) This barrier discriminates against wheelchair users by reducing the usability and effectiveness of the grab bar in getting onto and off the fixture. Plaintiff has encountered this particular barrier condition and was denied access in this manner. She demands that Defendant reposition the grab bar so that | Defendant will provide **compliant** grab bars. |

| | | |
|---|---|---|
| | it projects appropriately in front of the toilet in conformance with CBC and ADAAG requirements. | |
| B123 | **Women's RR at Conference – Accessible Stall – Toilet – Side Grab Bar – Knuckle Space.**  The knuckle space of the side grab bar at the base of the seat cover dispenser is 1–1/4", which is instead of the exact 1½ inch dimension required by code to provide the user a predictable surface behind the grab bar from which to leverage the back of the hand while making a dead weight transfer. (2007–CBC §1115B.7.1; and ADAAG §4.26.2.) This is a safety hazard.  Plaintiff believes has encountered this barrier within this particular room, or within other designated accessible rooms at the hotel, and that she was denied full and equal access in this manner. She demands that Defendants remount the bar to provide compliant knuckle space meeting the requirements of the CBC and ADAAG. | Defendant    will    provide    a **compliant** side grab bar. |
| B125 | **Women's RR at Conference – Accessible Stall – Sanitary Seat Cover Dispenser – Clear Floor Space.**  The trailing edge of the sanitary seat cover dispenser is 25–1/4" and the toilet projects off the rear wall a distance of 25–3/4", which means that the sanitary seat cover dispenser is not adjacent to the 30 X 48 inch clear floor space specified by the code.    (2007-CBC  §§  1127A.1(2);  and ADAAG §4.23.3.) This barrier discriminates against wheelchair users by reducing the usability of the fixture because it is out of reach.   Plaintiff encountered this particular barrier  condition  and  was  denied  ready access in this manner. She demands that Defendant relocate the seat cover dispenser next to a clear floor space and at a compliant height in compliance with CBC and ADAAG requirements. | Defendant    will    provide    a **compliant** seat cover dispenser. |
| B126 | **Women's RR at Conference – Accessible Stall – Sanitary Seat Cover Dispenser – Mounting  Height.**    The  height  of  the sanitary seat cover dispenser is 41–3/4 inches on center above the finished floor, which | See response to B125. |

| | | |
|---|---|---|
| | exceeds the 40 inch maximum specified by code. (2010-CBC §1115B.8.3 and ADAAG §4.27.3, 4.2.5&6.)  This maximum height is important to provide wheelchair users ready reach-range access from their seated position.  Plaintiff encountered this particular barrier and was denied ready access in this manner.  She demands that Defendants lower the dispenser in conformance with CBC and ADAAG requirements. | |
| B127 | **Women's RR at Conference – Semi–Ambulatory Stall.**  There are a total of seven toilet stalls in this restroom and no semi–ambulatory stall has been provided. The code requires that where six or more water closets are provided, one shall be equipped for semi-ambulatory access. (2010–CBC §1115B.3.1(5).)  Plaintiff has semi-ambulatory abilities, and is therefore potentially affected in this restroom, which she uses at convention time.  She demands that Defendant equip one stall for semi-ambulatory access in conformance with the CBC. | Defendant shall provide one **compliant** semi-ambulatory stall. |

## CONFERENCE ROOMS AND BALLROOMS

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B147 | **Sonoma CR – Entry – Push Side Kick Plate.**  The smooth uninterrupted surface at the bottom of the door has a height of 8–1/2" above the finished floor.  The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition.  (2007-CBC §1113A.5.)  As a wheelchair user, Plaintiff is affected by this condition.  She demands that Defendant provide a 10 inch kick plate or other compliant surface in conformance with CBC requirements. | Defendant will provide a **compliant** smooth uninterrupted surface. |

| B148 | **Sonoma CR – Entry – Tables – Knee Space.** The typical metal table in this room provides knee space that has a height of 26" above the finished floor. The typical 72" diameter round table in this room provides knee space that has a height of 25–1/2" above the finished floor at a distance of 12–3/4" back from the front face of the table. Under the code, seating for persons in wheelchairs at tables shall provide knee space at least 27" high, 30" wide and 19" deep. (2007-CBC §1122B.3; and ADAAG §4.32.3.) These barriers discriminate against wheelchair users by failing to provide a table that has equivalent usability to those provided to able-bodied patrons who can position themselves under the table in an appropriate manner. As a frequent convention-event visitor at this hotel, Plaintiff has encountered this barrier in many convention rooms. She demands that Defendant provide access to at least 5% of the tables in each convention room in conformance with CBC/ADAAG requirements, ensuring that none of such designated accessible tables has a pedestal, pedestal base or other obstruction located within the 19 inch minimum depth required for knee space dimension. She further demands that Defendant adopt a policy, backed by employee training, to ensure that accessible tables are appropriately provided at time of room setup. | Defendant will provide a minimum of five percent (5%) **compliant** accessible seating in this conference room. |
| --- | --- | --- |
| B149 | **San Jose CR – House Phone – Height.** The house phone in the San Jose room is set at a height of 64" above the finished floor. This is above the 48 inch maximum for a front approach or 54 inch maximum for a side approach. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to reach the phone in a readily accessible manner. Plaintiff is affected by this reach-range height. She demands that Defendant lower the phone to a code-compliant height. | Defendant will provide a **compliant** house phone. |

| | | |
|---|---|---|
| B150 | **San Jose CR – Signage – Height – Legibility.** The tiny sign offering assistance is mounted on the wall above the house phone at a height of 68–5/8" above the finished floor on center, which is too small to be viewed from this distance. This does not conform to the visual-character height table. (See 2010-CBC §1117B.5.4.) Plaintiff has been affected by this barrier in this manner. She demands that Defendant relocate the sign to comply with this CBC requirement. | Defendant will provide a **compliant** sign that complies with the visual character height table. |
| B151 | **San Jose CR – Audio Visual Controls – GPT Operation.** The audiovisual controls require grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | These controls are solely for employees. Defendant will provide a sign advising patrons that the controls are for the sole use of employees. |
| B152 | **San Jose CR – Tables – Knee Space.** The smaller round table in this room has knee space underneath the fixture that is 25–1/4" high, which is below the 27 inch minimum specified by code. Plaintiff demands that Defendant provide compliant tables and policy changes as specified at ¶0. | Defendant will provide a minimum of five percent (5%) **compliant** accessible seating in this conference room. |
| B153 | **Sacramento CR – House Phone – Height.** The house phone in the Sacramento Room is set at a height of 63" above the finished floor. This is above the 48 inch maximum for a front approach or 54 inch maximum for a side approach. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to reach the phone in a readily accessible manner. Plaintiff is affected by this reach-range height. She demands that Defendant lower the phone to a code-compliant height. | Defendant will provide a **compliant** house phone. |

| B154 | **Sacramento CR – Signage – Legibility.** The tiny sign offering assistance is mounted on the wall above the house phone at a height of 66–1/2" above the finished floor on center, which is too small to be viewed from this distance. This does not conform to the visual-character height table. (See 2010-CBC §1117B.5.4.) Plaintiff has been affected by this barrier in this manner. She demands that Defendant relocate the sign to comply with this CBC requirement | Defendant will provide a **compliant** sign that complies with the visual character height table. |
| --- | --- | --- |
| B155 | **Sacramento CR – Audio/Visual Controls – GPT Operation.** The audiovisual controls require grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | These controls are solely for employees. Defendant will provide a sign advising patrons that the controls are for the sole use of employees. |
| B156 | **Sacramento CR – Tables – Knee Space.** The smaller round table in this room has knee space underneath the fixture that is 25–1/4" high, which is below the 27 inch minimum specified by code. Plaintiff demands that Defendant provide compliant tables and policy changes as specified at Page 31, ¶0. | Defendant will provide a minimum of five percent (5%) **compliant** accessible seating in this conference room. |
| B157 | **Grand BR – House Phone – Height.** The house phone in the grand ballroom is set at a height of approximately 63" above the finished floor. This is mounted on the wall behind an 18" wide table, so it is not adjacent to a compliant clear floor space. This is above the 48 inch maximum for a front approach or 54 inch maximum for a side approach. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to reach the phone in a readily accessible manner. Plaintiff is | Defendant will provide a **compliant** house phone. |

|  |  |  |
|---|---|---|
|  | affected by this reach-range height. She demands that Defendant lower the phone to a code-compliant height. |  |
| B158 | **Grand BR – Signage – Legibility.** The tiny sign offering assistance is mounted on the wall above the house phone at a height of 66–1/2" above the finished floor on center, which is too small to be viewed from this distance. This does not conform to the visual-character height table. (See 2010-CBC §1117B.5.4.) Plaintiff has been affected by this barrier in this manner. She demands that Defendant relocate the sign to comply with this CBC requirement. | Defendant will provide a **compliant** sign that complies with the visual character height table. |
| B159 | **Grand BR – Audio Visual Controls – GPT Operation.** The audiovisual controls require grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | These controls are solely for employees. Defendant will provide a sign advising patrons that the controls are for the sole use of employees. |
| B160 | **Grand BR – Tables – Knee Space.** The smaller round table in this room has knee space underneath the fixture that is 25–1/4" high, which is below the 27 inch minimum specified by code. Plaintiff demands that Defendant provide compliant tables and policy changes as specified at, ¶0. | Defendant will provide a minimum of five percent (5%) **compliant** accessible seating in this ball room. |
| B161 | **PCR No. 217 – House Phone – Height.** The house phone in the grand ballroom is set at a height of approximately 63" above the finished floor. This is above the 48 inch maximum for a front approach or 54 inch maximum for a side approach. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to reach the phone in a readily accessible manner. Plaintiff is affected by | The private conference room will be closed and permanently reconverted to a regular room. |

| | | |
|---|---|---|
| | this reach-range height.  She demands that Defendant lower the phone to a code-compliant height. | |
| B162 | **PCR No. 217 – AV Controls – GPT Operation.**  The audiovisual controls require grasping, pinching and twisting of the wrist, which are operational features prohibited by code.    (2010-CBC   §1117B.6(4);   and ADAAG §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | See response to B161. |
| B163 | **PCR No. 217 – Patio Door – Drape Controls – Baton Height.**  The batons for the sheers and drapes are set at a height of approximately 68–1/4" above the finished floor, which exceeds the 48 inch (front approach) or 54 inch (side approach) maximums specified by code. (2007-CBC §§ 1117GB.6(5.1)    and    1133B.2.5.2;    and ADAAG §§ 4.31 and 4.27.3.)  This height places the wands outside the readily accessible height for wheelchair users, and make them difficult to impossible to use from   the   seated-position.    Plaintiff encountered these barriers and was denied ready access in this manner.  She demands that Defendant provide compliant controls and reach range meeting the requirements of the CBC and ADAAG. | See response to B161. |
| B164 | **PCR No. 217 – Patio Door – Batons – GPT Operation.**  The batons for the sheers and drapes require grasping, pinching and twisting of the wrist, which are operational features prohibited by code.    (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that Defendant   provide   compliant   controls meeting the requirements of the CBC and | See response to B161. |

| | | |
|---|---|---|
| | ADAAG. | |
| B165 | **PCR No. 217 – Patio Door – 2 Security Latches – GPT Operation.** There is a screw type latch at the bottom of the door that requires grasping, pinching and twisting of the wrist to use, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | See response to B161. |
| B166 | **PCR No. 217 – Patio Door – Opening Force.** The force required to open this door is 20 lbs. of pressure, exceeding the 5 lbs. maximum specified by code. On information and belief, the push pressure required to operate the doors serving all guestroom patio entrances to the Hotel and its facilities exceed the 5 lbs. maximum permitted by code, and is typical. (2007-CBC §1133B.2.5.) This barrier discriminates against persons with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through these patio doors without assistance. Plaintiff encountered many of these patio-entry-pressure conditions and was discriminated against in just such a manner. She demands that Defendants adjust these entrances so that the amount of push pressure required to operate is no more than 5 lbs. | See response to B161. |
| B167 | **PCR No. 217 – Patio Door – Threshold.** The threshold has a vertical rise of approximately 3–5/8" above the adjacent surface. (2007–CBC §1133B.2.4.1; and ADAAG §4.13.8.) This condition makes it extremely difficult to impossible for | See response to B161. |

| | | |
|---|---|---|
| | wheelchair users to cross.   Plaintiff has encountered similar barriers at the patio entries throughout the hotel during conventions.  She was denied full and equal access in this manner.   She demands that Defendant provide compliant patio entrance facilities meeting the requirements of the CBC and ADAAG. | |
| B168 | **PCR No. 217 – Restroom – Turn Around Space.**  The distance between the side of the tub and the edge of the toilet is approximately 48", so it is not possible to inscribe a 60" diameter turning circle within this room.   (2007-CBC §1115B.3.1; and ADAAG §4.23.3.), making it difficult to impossible for wheelchair users to turn around and exit the bathroom.   Plaintiff demands that Defendant provide compliant clear floor and turning space meeting the requirements of the CBC and ADAAG. | See response to B161. |
| B169 | **PCR No. 217 – Restroom – Toilet – Side Transfer Space.**  The toilet is mounted in an alcove that has a width of approximately 36", so the clear floor space on the wide side of the fixture is only approximately 9". | See response to B161. |
| B170 | **PCR No. 217 – Restroom – Toilet – Front Transfer Space.**   The clear floor space provided in front of the fixture is approximately 38". | See response to B161. |
| B171 | **PCR No. 217 – Restroom – Toilet – Seat Height.**  The height of the toilet seat is set approximately 15" above the finished floor. | See response to B161. |
| B172 | **PCR No. 217 – Restroom – Toilet – Grab Bars – Missing.**  No grab bars have been provided on the wall beside or behind the toilet fixture. | See response to B161. |
| B173 | **PCR No. 217 – Restroom – Toilet – Sanitary Seat Cover Dispenser – Clear Floor Space.**   The sanitary seat cover dispenser is mounted on the wall beside (and directly alongside) the toilet, which means that the sanitary seat cover dispenser is not adjacent to the 30 X 48 inch clear floor space | See response to B161. |

| | | |
|---|---|---|
| | specified by the code.   (2007-CBC §§ 1127A.1(2); and ADAAG §4.23.3.)   This barrier discriminates against wheelchair users by reducing the usability of the fixture because it is out of reach.  Plaintiff demands that Defendant relocate the seat cover dispenser next to a clear floor space and at a compliant height in compliance with CBC and ADAAG requirements. | |
| B174 | **PCR No. 217 – Restroom – Toilet – Sanitary Seat Cover Dispenser – Mounting Height.**  The sanitary seat cover dispenser is mounted on the wall beside the toilet at a height of approximately 43" above the finished floor, which exceeds the 40 inch maximum specified by code.   (2010-CBC §1115B.8.3 and ADAAG §4.27.3, 4.2.5&6.)  This maximum height is important to provide wheelchair users ready reach-range access from their seated position.  Plaintiff demands that Defendants lower the dispenser in conformance with CBC and ADAAG requirements. | See response to B161. |
| B175 | **PCR No. 217 – Restroom – Tub – Landing.**  The clear floor space provided in front of the tub does not extend underneath the sink, which means that it does not comply with the code. | See response to B161. |
| B176 | **PCR No. 217 – Restroom – Tub – Grab Bars – Missing.**  No grab bars have been provided in this tub. | See response to B161. |
| B177 | **PCR No. 217 – Restroom – Tub – Shower Wand – Missing.**   No Shower wand has been provided in this tub. | See response to B161. |
| B178 | **PCR No. 217 – Restroom – Tub – Hardware – GPT Operation.**  The controls for the tub require grasping pinching and twisting of the wrist, which are operational features prohibited by code.   (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)   It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist | See response to B161. |

| | | |
|---|---|---|
| | (GPT) to operate.  Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG, or remove the tub. | |
| B179 | **PCR No. 217 – Restroom – Sink – Kneespace.**  The sink provided within this restroom does not provide any kneespace underneath the fixture. | See response to B161. |
| B180 | **PCR No. 217 – Restroom – Sink – House Phone – Height.**  The house phone in the grand ballroom is set at a height of approximately 63–1/2" above the finished floor.  This is above the 48 inch maximum for a front approach or 54 inch maximum for a side approach. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.)  This requirement ensures wheelchair users are able to reach the phone in a readily accessible manner.  Plaintiff is affected by this reach-range height.  She demands that Defendant lower the phone to a code-compliant height. | See response to B161. |

**FITNESS CENTER**

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B181 | **Women's LR – Entry Door – ADAAG Signage – Absent.**  There's no ADA signage for the Women's Locker Room.  (ADAAG §4.30.6.)  This barrier discriminates against all persons with disabilities by failing to notify the individual that an accessible restroom facility is available to them.  Plaintiff demands that Defendant provide proper signage in conformance with CBC/ADAAG requirements. | Defendant will provide a **compliant** sign. |
| B183 | **Women's LR – Entry Door – Opening Force.**  The force required to open the door is 8 lbs. of pressure.  (2007-CBC §1133B.2.5.)  This barrier discriminates against persons with disabilities whose physical condition requires the use of a | The door pressure will be modified during routine maintenance.  Defendant will also adopt a policy, practice, and procedure requiring that push pressure be checked and adjusted |

| | | |
|---|---|---|
| | wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance. On information and belief, Plaintiff encountered this specific entry-pressure condition and was discriminated against in just such a manner. She demands that Defendant adjust these entrances so that the amount of push pressure required to operate is no more than 5 lbs. | during routine maintenance. |
| B184 | **Women's LR – Entry Door – GPT Lock Operation.** The lock on this door is activated by the use of the room card key, which requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) Plaintiff demands that Defendant provide a compliant card-key attached to a key ring in order to meet the requirements of the CBC and ADAAG. (See Page 3 at ¶0, supra.). | Defendant will provide a card–key attached to a key ring (through a hole punched at the top of the card), which will allow the user to slip the ring between the upper part of fingers and avoid having to perform the prohibited–required–dextral movements. |
| B187 | **Women's LR – Sanitary Napkin Dispenser GPT Operation.** The sanitary napkin dispenser requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | Defendant will modify or remove the sanitary napkin dispenser. |
| B189 | **Women's LR – Sink – Knee Space.** The knee space provided underneath the sink at the front face is 25–1/2" above the finished floor. | Defendant will provide **compliant** knee clearance for one sink. |
| B192 | **Women's LR – Kleenex Dispenser.** The Kleenex dispenser is set at a height of 50–1/2" above the finished floor. | Defendant will modify or provide an additional Kleenex dispenser. |

| B193 | **Women's LR – Accessible Stall – Closer.** The accessible stall doesn't have an automatic closer on it. | Defendant will repair during routine maintenance. |
|------|------|------|
| B194 | **Women's LR – Accessible Stall – Strike Edge Clearance.** The strike edge clearance for the accessible stall door is 16–3/8", which is below the 18 inch minimum specified by code. | Defendant will provide compliant strike edge clearance to the extent required. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B195 | **Women's LR – Accessible Stall – Coat Hook.** The coat hooks on the back of the door are set at a height of 48–3/4" and 66" above the finished floor, which both exceed the 44 inch maximum permitted by code. This reduces the ready usability of the coat hook in a confined and sanitary environment. Plaintiff demands that Defendant remount the coat hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | Defendant will provide a **compliant** coat hook. |
| B196 | **Women's LR – Accessible Stall – Toilet – Flush Valve.** The flush valve is on the narrow side of the toilet instead of the wide-side position required by code. (2007-CBC §1127A.2.3(2) and ADAAG §4.16.5.) This condition discriminates against wheelchair users, making it difficult to impossible for them to obtain ready access to the control. Plaintiff would be affected by this condition in the ladies locker room and feels deterred. She demands that Defendants relocate the flush control in conformance with CBC/ADAAG requirements. | Defendant will add an auto-flush system. |
| B197 | **Women's LR – Accessible Stall – Toilet – On–Center Dimension.** The toilet is set 18–5/8" on center from the adjacent wall, which does not conform to the 18-inch exact centerline dimension specified by code. (2010-CBC §1115B.4.1(1); and ADAAG 4.17.3 and Fig. 30.) This accurate-dimension | Defendant will provide a toilet with **compliant** on-center dimensions. |

| | | |
|---|---|---|
| | provides wheelchair users with a predictable built environment and a learned-leverage point for accomplishing a weighted and partially blind transfer. It is one of the most important specified dimensions under the code for avoiding hazard. Plaintiff is affected and deterred by her knowledge of this condition, and demands that Defendant remount the toilet to the exact specified dimension to conform to code, or provide a ½-inch backer-board behind the side grab bar. | |
| B198 | **Women's LR – Accessible Stall – Sanitary Seat Cover Dispenser – Clear Floor Space.** The sanitary seat cover dispenser is set 20–1/2" from the wall behind the toilet, so it is not adjacent to the 30 X 48 inch clear floor space specified by the code. (2007-CBC §§ 1127A.1(2); and ADAAG §4.23.3.)   This barrier discriminates against wheelchair users by reducing the usability of the fixture because it is out of reach. Plaintiff would be affected by this condition and demands that Defendant relocate the seat cover dispenser next to a clear floor space and at a compliant height in compliance with CBC and ADAAG requirements. | Defendant    will    provide    a **compliant** seat-cover dispenser. |
| B199 | **Women's LR – Accessible Stall – Sanitary Seat Cover Dispenser – Mounting Height.** The height of the sanitary seat cover dispenser is 42 on center, which exceeds the 40 inch maximum specified by code. (2010-CBC §1115B.8.3 and ADAAG §4.27.3, 4.2.5&6.)    This maximum height is important to provide wheelchair users ready reach-range access from their seated position. If she used the locker room, Plaintiff would be affected in this manner, and is thereby currently deterred. She demands that Defendants lower the dispenser in conformance with CBC and ADAAG requirements. | Defendant    will    provide    a **compliant** seat-cover dispenser. |

| | | |
|---|---|---|
| B201 | **Women's LR – Accessible Stall – Side Grab Bar – Projection.** The distance between the wall behind the toilet and the leading edge to the side grab bar is 50 inches, which is less than the 54 inch minimum specified by the code. (ADAAG §4.17.6 and Figure 30.) It also projects less than the 24 inch minimum projection required by the code. (2007–CBC §1115B.4.1(3)(3.1).) This barrier discriminates against wheelchair users by reducing the usability and effectiveness of the grab bar in getting onto and off the fixture. Plaintiff has encountered this particular barrier condition and was denied access in this manner. She demands that Defendant reposition the grab bar so that it projects appropriately in front of the toilet in conformance with CBC and ADAAG requirements. | Defendant will provide a **compliant** side grab bar. |
| B203 | **Women's LR – Accessible Stall – Side Grab Bar – Obstruction of Required Knuckle Space.** The knuckle space between the face of the sanitary seat cover dispenser and the face of the grab bar is 3/4", which is instead of the exact 1½ inch dimension required by code to provide the user a predictable surface behind the grab bar from which to leverage the back of the hand while making a dead weight transfer. (2007–CBC §1115B.7.1; and ADAAG §4.26.2.) This obstruction is a safety hazard. Plaintiff believes she has encountered this particular barrier, and suffered barrier–risk discrimination in this manner. She demands that Defendants relocate the obstructing sanitary seat cover dispenser so as to provide compliant knuckle space meeting the requirements of the CBC and ADAAG. | Defendant will provide a **compliant** side grab bar. |
| B204 | **Women's LR – Path of Travel Thru Locker Room.** The distance between the face of the lockers and the long edge of the bench is 33–1/2, the face of the lockers and the end of the bench is 23" and the face of the make–up counter and the face of the bench is 38–1/4". Plaintiff demands that Defendant rearrange the furniture, and | Defendant shall permanently close the locker room and shower from public use. |

| | | |
|---|---|---|
| | develop a policy, backed by employee training, to maintain a 36 inch path of travel through the locker room. | |
| B205 | **Women's LR – Turn Around Space.** The distance between the face of the lockers and the long edge of the bench is 33–1/2, the face of the lockers and the end of the bench is 23" and the face of the make–up counter and the face of the bench is 38–1/4". This means it is not possible to inscribe the required 60 inch turn-around space within this room. (2007-CBC §1115B.3.1; and ADAAG §4.23.3.) Plaintiff would be denied ready access by this condition. She demands that Defendant renovate the room to provide compliant clear floor and turning space meeting the requirements of the CBC and ADAAG. | See response to B204. |
| B206 | **Women's LR – Make-up Counter – Adjacent Clear Floor Space.** The distance between the face of the make–up counter and the face of the bench is 38–1/4". | See response to B204. |
| B207 | **Women's LR – Make-up Counter – Top Height AFF.** The counter is set at a height of 34–1/4" above the finished floor, which exceeds the 34 inch maximum specified by code. Plaintiff waives her claim as to this particular barrier condition and without prejudice to her position on other counter heights. However, this condition should be addressed simultaneously with the knee-space condition specified next. | See response to B204. |
| B208 | **Women's LR – Make-up Counter – Knee Space.** The knee space provided underneath the counter is 25–7/8" above the finished floor, which is below the 27 inch minimum specified by code. Plaintiff demands that Defendant renovate the counter to provide compliant knee-space. | See response to B204. |
| B209 | **Women's LR – Make-up Counter – Mirror AFF.** The mirror is set at a height of 40–1/2" above the finished floor. This exceeds the 40 inch maximum AFF | See response to B204. |

|  | permitted by code.  (CBC (Aug. 09 rev.) §1115B.8.1.1; and ADAAG 4.19.6.)  This added height makes it difficult for the wheelchair user, who is seated low, to use the mirror in a normal manner. Plaintiff has encountered this particular barrier condition and was denied access in this manner.  She demands that Defendant provide a compliant mirror meeting the requirements of the CBC and ADAAG. |  |
|---|---|---|
| B210 | **Women's LR – Make–up Counter – Hair Dryer – Mounting Height.** The hair dryer at the south end of the counter is set at a height of 55–1/2" above the finished floor. | See response to B204. |
| B211 | **Women's LR – Shower Stall – Entrance – Vertical Rise.**  There is a vertical rise of 1" between the carpet and the tile at the entrance to the Shower Stall, which exceeds the ¼ inch, or ½ inch beveled maximum specified by code. | See response to B204. |
| B212 | **Women's LR – Shower Stall – Drain – Slopes.**  Just on the interior of the space there is a drain with a slope is 3.1% on the east side of the drain and 3.1% on the north side of the drain, which exceed the 2% maximum specified by code. | See response to B204. |
| B213 | **Women's LR – Shower Stall – Landing.** The width of the width of the clear floor space in front of the accessible stall is 18" between the towel basket that is chained to the wall and the face of the shower stall, which reduces the 60 inch required landing. | See response to B204. |
| B214 | **Women's LR – Shower Stall – Threshold at Face.** There is a vertical rise of 3/4" at the entrance to the stall and the slope has a pitch of 12.1%.  (2007–CBC §1133B.2.4.1; and ADAAG §4.13.8.)  This condition makes it extremely difficult for wheelchair users to cross.  If encountered, Plaintiff would be denied ready access, and overcoming this barrier would diminish Plaintiff's physical and mechanical endurance..  She is aware of this barrier's existence and is caused a | See response to B204. |

| | | |
|---|---|---|
| | deterrence–denied of access in this manner. She demands that Defendant provide a compliant threshold–transition meeting the requirements of the CBC and ADAAG. | |
| B215 | **Women's LR – Shower Stall – Dimensions.** The stall has a dimension of 49–1/2" by 49", which is below the 60 inch exact dimension required by code. | See response to B204. |
| B216 | **Women's LR – Shower Stall – Grab Bars – Control Wall Mounting Height.** The grab bar on the control wall is set at a height of 32–3/4" above the finished floor. | See response to B204. |
| B217 | **Women's LR – Shower Stall – Grab Bars – Rear Wall Knuckle Space.** The grab bar on the rear wall has a knuckle space of 1–3/8", which is instead of the exact 1½ inch dimension required by code to provide the user a predictable surface behind the grab bar from which to leverage the back of the hand while making a dead weight transfer. (2007–CBC §1115B.7.1; and ADAAG §4.26.2.) Plaintiff waives her claim as to this deficiency. | See response to B204. |
| B218 | **Women's LR – Shower Stall – Grab Bars – Rear Wall Mounting Height.** The grab bar on the rear wall is set at a height of 32–3/4 above the finished floor. | See response to B204. |
| B219 | **Women's LR – Shower Stall – Drain – Slopes.** Slope around the drain is 7.4% on the west side, 3.7% on the east side, 12.8% on the south side and .8% on the north side. | See response to B204. |
| B220 | **Women's LR – Shower Stall – Soap Dish – Mounting Height.** The distance between the grab bar on the control wall and the bottom of the two soap dishes is 4–1/2" and they project 3–1/8" to 4" off of the wall, which means that they obstruct the grab bar below. | See response to B204. |
| B221 | **Women's LR – Shower Stall – Shower Head Adjustment Bar – Location.** The shower head adjustment bar is set at a | See response to B204. |

| | | |
|---|---|---|
| | distance of 28–3/4" from the face of the shower stall. | |
| B222 | **Women's LR – Shower Stall – Shower Head Adjustment Bar – Mounting Height.** The bottom end of the shower head adjustment bar is set at a height of 48" above the finished floor. | See response to B204. |
| B223 | **Women's LR – Shower Stall – Shower Head Adjustment Bar – Missing Parts.** The shower head adjustment bar is missing parts, which means that it's not adjustable. | See response to B204. |
| B224 | **Women's LR – Shower Stall – Mixing Valve – Location.** The center line of the mixing valve is set 19–3/4" from the front face of the shower stall. The distance between the front face of the shower bench and control wall is 39", which means that the shower controls are not located within the reach range of a person seated on the shower bench. | See response to B204. |

## DRINKING FOUNTAIN OUTSIDE OF LOCKER ROOM

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B225 | **Drinking Foundation – Type.** This is a low type drinking fountain only and no hi–lo type drinking fountain has been provided. | Defendant will provide paper cup dispenser. |

## SAUNA ON SECOND FLOOR

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B226 | **Sauna – Entry Door – Strike Edge Clearance.** The strike edge clearance for the door is 9–1/4", which is below the 18 inches required by code, and solely because the door landing is obstructed by the scale and trash can that have been located in front of | Defendant shall permanently close the sauna to public use. |

| | | |
|---|---|---|
| | the door.  Plaintiff demands that Defendant adopt a written policy backed by employee training to maintain this area free of obstructions. | |
| B227 | **Sauna – Entry Door – Door Landing.**  The door landing on the interior side of the sauna is 45–3/4" between the face of the door and the face of the bench, which is below the 48 inch minimum door landing required by code for this front approach.  (2007-CBC §1126A.3.2.1 and Figure 11A-8A, and ADAAG § 4.13.6 and Figure 25(a).)  This condition discriminates by making it more difficult for wheelchair users to obtain ready access in exiting the sauna and its bench for a seated transfer, and/or to exit.  Plaintiff would be affected by this condition and demands that Defendant eliminate the obstruction in conformance with CBC and ADAAG requirements.. | See response to B226. |
| B228 | **Sauna – Entry Door – Threshold.**  The threshold provided for this door has a height of 1".   (2007–CBC §1133B.2.4.1; and ADAAG §4.13.8.)  This condition makes it extremely difficult for wheelchair users to cross.  Plaintiff believes she has encountered this barrier, and that she was denied readily accessible facilities in this manner.   She demands that Defendant provide a compliant threshold meeting the requirements of the CBC and ADAAG. | See response to B226. |
| B229 | **Sauna – Turn Around Space.**  The turn around space provided inside the sauna is 45–3/4" between the face of the door and the face of the bench, which is below the 60 inch minimum specified by code.  (2007-CBC §1115B.3.1;  and  ADAAG  §4.23.3.)  Plaintiff believes she has encountered this barrier and was denied full and equal access in this manner.  She demands that Defendant renovate the sauna to provide compliant clear floor and turning space meeting the requirements of the CBC and ADAAG. | See response to B226. |

| B230 | **Sauna – Controls – Clear Floor Space.** There is a scale and a trash can in front of the control for the sauna, which means that it is not adjacent to the clear floor space specified by code.  (2007-CBC §§ 1127A.1(2); and ADAAG §4.23.3.)  This barrier discriminates against wheelchair users by reducing the usability of the fixture because it is out of reach.  If encountered by Plaintiff, it would discriminate against her ready access in this manner.  She demands that Defendant relocate the obstruction to provide a clear floor space in compliance with CBC and ADAAG requirements.  She also demands that Defendant adopt a written policy, backed by employee training, concerning the placement of obstructions within the clear floor space of guest-operated controls. | See response to B226. |
|------|------|------|
| B231 | **Sauna – Controls – GPT Operation.**  The controls for the sauna require grasping, twisting, pinching of the wrist, which are operational features prohibited by code.  (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | See response to B226. |

**SWIMMING POOL**

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|------|------|------|
| B271 | **Swimming Pool – Main Gate – Latch – GPT Operation.**   The latch requires two separate actions, and the prohibit actions of grasping and twisting of the wrist to operate, which are operational-features prohibited by code.    (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)  Plaintiff encountered this | Defendant will provide a **compliant** main gate and compliant gate latch. |

| | | |
|---|---|---|
| | barrier and was denied ready access in this manner. She demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG. | |
| B272 | **Swimming Pool – Main Gate – Latch Height.** The latch is set at a height of 59" above the finished floor. | Defendant will provide a **compliant** main gate and compliant gate latch. |
| B273 | **Swimming Pool – Main Gate – Kick Plate.** There is no kick plate provided on the lower 10" of the gate. The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007-CBC §1113A.5.) As a wheelchair user, Plaintiff is affected by this condition. She demands that Defendant provide a 10 inch kick plate or other compliant surface in conformance with CBC requirements. | Defendant will provide a **compliant** smooth uninterrupted service. |
| B274 | **Swimming Pool – Main Gate – Clear Opening.** The clear opening of this gate is only 27", which is below the 32 inch minimum specified by code. (2010-CBC §1133B.2.5.1 and ADAAG §4.13.11. This minimum clearance is often referred to as knuckle clearance, as without it, the wheelchair user is in exposed to the hazard of striking the doorway while attempting the dual action of both operating the swing of the door and maneuvering the wheelchair through it. Plaintiff has encountered this particular barrier and was exposed to this barrier-risk and denied ready access in this manner. She demands that Defendant widen the opening the 32-inch minimum specified by code. | Defendant will provide a **compliant** main gate and compliant gate latch. |
| B275 | **Swimming Pool – Secondary Gate – Replication of Foregoing Conditions.** Each of these barrier conditions are replicated at the Pool's secondary gate, which Plaintiff has encountered. She demands the rectification of such conditions at this secondary location, and as specified, supra. | Defendant will provide a **compliant** secondary gate, and compliant gate latch. |

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 65 of 122

| | | |
|---|---|---|
| B277 | **Swimming Pool – Exterior Door Leading to Fitness Center – Push Plate.** The smooth uninterrupted surface provided at the bottom of this door only extends approximately 8" above the finished floor, which is below the 10 inch minimum required by code. This avoids the wheelchair footrest being caught and creating a trap or hazardous condition. (2007-CBC §1113A.5.) If she attempted use of this door, Plaintiff would be affected by this barrier-risk in attempting to gain ready access. She demands that Defendants provide a 10 inch kick plate or other compliance surface in conformance with CBC requirements. | This door is not used. Signs shall be placed noting that it is an emergency exit only. |
| B278 | **Swimming Pool – Exterior Door Leading to Fitness Center – Operational Push Pressure.** The force required to open the door is approximately 7 lbs. of pressure, which exceeds the 5 lbs. maximum permitted by code, and is typical. (2007-CBC §1133B.2.5.) This barrier discriminates against persons with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance. On information and belief, Plaintiff encountered this condition and was affected in this manner. Plaintiff demands that Defendants adjust this entrance so that the amount of push pressure required to operate is no more than 5 lbs. | This door is not used. Signs shall be placed noting that it is an emergency exit only. However, nevertheless, the door pressure shall be modified during routine maintenance. |
| B279 | **Swimming Pool – Exterior Door Leading to Fitness Center – Threshold Height.** The threshold for the door between the exercise area and the pool deck has a vertical rise of 3–5/8". (2007–CBC §1133B.2.4.1; and ADAAG §4.13.8.) This condition makes it extremely difficult for wheelchair users to cross. Plaintiff has encountered this barrier and was denied access in this manner. She | This door is not used. Signs shall be placed noting that it is an emergency exit only. |

|  |  |  |
|---|---|---|
|  | demands that Defendant provide a compliant entrance threshold transition meeting the requirements of the CBC and ADAAG. |  |
| B280 | **Swimming Pool – House Phone – Clear Floor Space.** The distance between the face of the wall that the house phone is mounted on and the weight machine is approximately 25", which means that the house phone is not mounted adjacent to a compliant clear floor space. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to approach and reach the phone in a readily accessible manner. Plaintiff is affected by this barrier. She demands that Defendant relocate the phone next to a code-compliant clear floor space. | Defendant will provide **compliant** clear floor space. |
| B281 | **Swimming Pool – House Phone – Volume Control – GPT Operation.** The volume control mounted on the wall above the telephone requires grasping, pinching and twisting of the wrist, which are operational feature-requirements prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant controls meeting the requirements of the CBC and ADAAG | Defendant will provide a compliant phone. |
| B282 | **Swimming Pool – Path of Travel to Pool Deck – Walk–Off Mat.** The double doors to the small hotel lobby on this level have a walk–off mat on the exterior side that is not attached to the floor, and buckles under a wheelchair user's wheels. All ground and floor surfaces along an accessible route are required to be stable, firm and slip resistant. (2007-CBC §1124B.1; and ADAAG §4.5.1.) This condition causes a wheelchair user fatigue, both physically and mechanically. Plaintiff's ability to obtain ready access is | See response to B37. |

| | | |
|---|---|---|
| | potentially affected by this condition. She demands that Defendant firmly attach the mat in conformance with CBC and ADAAG requirements. | |
| B283 | **Swimming Pool – Lift for Pool and Hot Tub.** There is no lift provided for the swimming pool or for the hot tub. Under the code, swimming pool deck areas shall be accessible and a mechanism to assist persons with disabilities in gaining entry into the pool and in exiting from the pool shall be provided. Such a mechanism may consist of a swimming pool lift device as long as the device meets all of the code specified criteria; for example, provision of hard-back chair. (See 2007-CBC §1104B.4.3.) Plaintiff has encountered this barrier and was denied independent access to the pool. She demands that Defendant provide either a shared lift, or another compliant means of vertical access to the both pool and hot tub. | A **compliant** lift for the pool and hot tub shall be provided. |
| B284 | **Swimming Pools – Deck Tables.** There are two different styles, none of which are accessible to persons using wheelchairs. For the solid top round tables, the knee space provided underneath the table is set at 26–1/2" above the finished floor, has a maximum width of 24", and extends a maximum of 5" back from the front face of the table. For the wire mesh round tables, the knee space provided underneath the table is set at 26–3/4" above the finished floor, has a maximum width of 25" and it extends a maximum of 5–3/4" back from the front face of the table. Under the code, seating for persons in wheelchairs at tables shall provide knee space at least 27" high, 30" wide and 19" deep. (2007-CBC §1122B.3; and ADAAG §4.32.3.) These barriers discriminate against wheelchair users by failing to provide a table that has equivalent usability to those provided to able-bodied patrons who can position themselves under the table in an appropriate manner. Plaintiff has encountered these knee-space barriers at | Defendant will provide a minimum of five percent (5%) **compliant** accessible seating in the exterior patio area. |

| | | |
|---|---|---|
| | the tables on the pool-deck and was denied ready access in this manner.  She demands that Defendant provide access to at least 5% of the tables in each convention room in conformance with CBC/ADAAG requirements, ensuring that none of such designated accessible tables has a pedestal, pedestal base or other obstruction located within the 19 inch minimum depth required for knee space dimension. | |
| B285 | **Swimming Pool – Emergency Telephone – Cover – Dual–Hand–Operation to Access.** Opening the cover for the phone box requires a double action that is prohibited by the code.   (2010-CBC *§1127A.9.6.4* ;  and ADAAG §4.27.4.)  The amount of pressure required to open the box is approximately 50 pounds, which is in excess of the 5 lbs. maximum specified by code.  (Id.)  Due to her disabilities, Plaintiff would be affected and denied ready access by both of these conditions.   She demands that Defendants provide a compliant model complying with the CBC and ADAAG. | Defendant will modify or replace phone cabinet. |
| B286 | **Swimming Pool – Emergency Telephone – Height of Controls.**  The highest operable mechanism is set at a height of approximately 61" above the finished floor. This is above the 48 inch maximum for a front approach or 54 inch maximum for a side approach.  (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.)  This requirement ensures wheelchair users are able to reach the phone in a readily accessible manner.  Plaintiff is affected by this reach-range height.  She demands that Defendant lower the phone to a code-compliant height. | Defendant will modify or replace phone cabinet. |

## GUESTROOMS

| Reference | Alleged Barrier | Agreed Upon Correction |
|---|---|---|

| No. | | |
|---|---|---|
| B287 | **Number and Range of Accommodation.** Currently, 258-room hotel has a total of only 9 designated accessible rooms, which are all arranged along the x03 column. (I.e., Nos. 203, 303, 403, 503, 603, 703, 803, 903, 1003.) However, under the code, the Hotel is required to have a total of 10, with 3 of which must be equipped with a roll-in shower.   (2010-CBC Table 11B-3 and ADAAG 9.1.2.)   Furthermore, the code requires the designated accessible guestrooms be disbursed among the range of accommodation.   (2010-CBC §1111B.4.1 and ADAAG 9.1.4(1).) However, none of the designated accessible guestrooms are of the suite-class, which is Plaintiff's preferred choice for entertainment purposes when attending conventions centered at this Doubletree Hotel.   Therefore, Plaintiff demands that in addition to correcting the barriers identified herein for the existing designated rooms that Defendants retrofit two of the existing suites to provide wheelchair access. | Defendant shall provide a total of ten (10) accessible guestrooms. Three (3) of the guestrooms will be equipped with a roll-in shower. At least one (1) of the accessible guestrooms shall be a suite. |
| B288 | **GR 934 – Entry Door – Height of Peephole.** The peephole is set at a height of 59–1/2, which exceeds the 48 inch maximum specified by code.   (2007-CBC §1117GB.6(5.1) and ADAAG 4.27.3.) As a wheelchair user and person of short stature, Plaintiff is significantly affected by this condition.   She demands that in all designated guestrooms to be retrofitted or created under this decree that Defendants lower the peephole to no higher than 48 inches (40 inches preferred) as required by CBC and ADAAG. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a compliant peephole. |
| B289 | **GR 934 – Entry Door – Locking Mechanism – GPT Operation.** The locking mechanism for the door is a card key, that requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code.   (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)   It is non-compliant with the code that requires that controls in designated rooms not require | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a card–key attached to a key ring (through a hole punched at the top of the card), which will allow the user to slip the ring between the upper |

| | | |
|---|---|---|
| | grasping, pinching, or twisting of the wrist (GPT) to operate.   Plaintiff demands that Defendant provide compliant card-keys meeting the requirements of the CBC and ADAAG. (Note: this consists of the same card-key attached to a key ring through a hole punched at the card's top.) | part of fingers and avoid having to perform the prohibited–required–dextral movements. |
| B290 | **GR 934 – Entry Door – Push Pressure.** The push pressure required to open the door is approximately 11 pounds, greatly exceeding the 5 lbs. maximum specified by code.   On information and belief, and based on the sampling of guestroom doors surveyed, the push pressure required to operate the doors serving all guestroom entrances to the Hotel and its facilities regularly exceed the 5 lbs. maximum permitted by code, and is typical.   (2007-CBC §1133B.2.5.)   Under the code, the doors for all guestrooms at a transient lodging facility, whether designated accessible or not, are required to meet the operational force requirement.   This typical barrier discriminates against persons with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance.   During her convention visits to the hotel, Plaintiff has regularly encountered these entry-pressure conditions and was discriminated against in just such a manner.   She demands that Defendants adjust these entrances so that the amount of push pressure required to operate is no more than 5 lbs. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), the door pressure will be modified during routine maintenance. Defendant will also adopt a policy, practice, and procedure requiring that push pressure be checked and adjusted during routine maintenance for all accessible rooms. |
| B291 | **GR 934 – Entry Door – Strike Edge Clearance.** The strike edge clearance for the door on the interior side is 4 inches; and the setback is a 12" section of wall obstructing the strike edge clearance.   This condition is far below the 18 inch minimum required by code.   (2007-CBC §1133B.2.4.3; and ADAAG at §4.13.6 & Figure 25.)   This | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will attempt to achieve **compliant** strike edge clearance to the maximum extent feasible. However, no modification will be |

| | | |
|---|---|---|
| | requirement applies to all guestrooms on premises, i.e., the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.) The entry discriminates against wheelchair users by making it impossible to position the wheelchair at a location where the door can swing upon without striking the chair, and makes it much more difficult, if not impossible, to go through the door independently. In her various stays at the hotel for convention gatherings, Plaintiff has encountered this condition repeatedly and has been affected in this manner. She demands that Defendants reconfigure the vestibules and entries of all guestrooms on premises to provide no less than 18 inches of strike side clearance on the side to which the door swings, and in full conformance with CBC and ADAAG requirements, or provide accomplish access through another compliant means such as automatic door openers. | required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B292 | **GR 934 – Entry Door – Door Landing.** The distance between the face of the door and column in the door landing on the strike edge side of the door is 44–3/4", which below the 60 inch minimum door landing required by code for this front approach. (2007-CBC §1126A.3.2.1 and Figure 11A-8A, and ADAAG § 4.13.6 and Figure 25(a).) This condition discriminates by making it more difficult for wheelchair users to obtain ready access in exiting the restroom. Plaintiff encountered this specific type of barrier condition in many guestrooms and was affected in this manner. She demands that Defendant renovate to provide a compliant door landing in conformance with CBC and ADAAG requirements.. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will attempt to achieve a **compliant** landing to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B293 | **GR 934 – Entry Door – Door Hardware – GPT Operation.** The hardware on the interior side of the door is a twist type knob, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide **compliant** door hardware. |

| | | |
|---|---|---|
| | designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that Defendant provide compliant hardware meeting the requirements of the CBC and ADAAG. | |
| B294 | **GR 934 – Entry Door – Deadbolt – GPT Operation and Operating Force.**  There is a twist type dead bolt on this door that requires 6 pounds of pressure to latch it, which are operational features prohibited by code.    (2010-CBC   §1117B.6(4);   and ADAAG §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that Defendant provide a compliant deadbolt meeting the requirements of the CBC and ADAAG. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will test and adjust the operating force of the deadlock, or alternatively provide a new deadlock. |
| B295 | **GR 934 – Entry Door – Security Latch – Height.**  The height of the security latch at the top of the door is 59–1/2 inches on center.   Door hardware must be centered between 30" and 44" above the floor. (2007-CBC  §1133B.2.4.2 and ADAAG §4.13.9.) This applies to all guestrooms on premises. (See 2007-CBC §111B.4.2.3.2.)  Both as a wheelchair user and a person of short stature that sometimes relies upon hand-crutches, Plaintiff is significantly affected by this reach-range condition.   She demands that Defendants lower the security latch in all guestrooms on premises to conform to ADAAG and the CBC. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** security latch. |
| B296 | **GR 934 – Closet – Door Clear Opening.** The closet is a bi–fold door with a clear opening for both doors is 30" and the depth of the closet is 26", which is less than the 32 inches required. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide at least one **compliant** closet.  However, no modification will be required that would affect any significant load-bearing,    plumbing    or electrical features of the building, and/or where the modification would be technically infeasible. |

| | | Defendant also reserves the right to move the location of the closet, and/or provide a different type of compliant closet. |
|---|---|---|
| B297 | **GR 934 – Closet – Door Landing.** The distance between the face of the sliding glass door for the closet and the face of the counter on the opposite wall is 43", which is the door landing for the closet door, which is less than the 60 inches required. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide at least one (1) **compliant** closet to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. Defendant also reserves the right to move the location of the closet, and/or provide a different type of compliant closet. |
| B298 | **GR 934 – Closet – Door Hardware – GPT Operation.** This door does not have u–shaped hardware on it so the user has to grasp and pinch the door to get it opened and closed, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide a compliant d-handle meeting the requirements of the CBC and ADAAG. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide **compliant** door hardware. |
| B299 | **GR 934 – Closet – Shelf and Clothes Rod – Heights.** The height of the clothes rod is 65–1/4 and the height of the shelf is 67–1/4, which both significantly exceeds the 54 inch maximum height specified by code. (2007-CBC §§ Sections1118B.5 and 1118B.6, 1125B.3, and Figure 11B-5D; and ADAAG | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide **compliant** shelf and clothes rod heights. |

| | | |
|---|---|---|
| | §§ 4.2.5, 4.2.6, 4.25.3, Fig. 5 and Fig 6.) This height makes it difficult to impossible for the seated wheelchair user to access. Plaintiff encountered these barriers within the hotel's suites, and was denied full, equal and safe facilities in this manner.   She demands that this condition be addressed in the designated accessible suite specified in this decree. | |
| B300 | **GR 934 – Closet – Iron Set – Heights.** The iron is set at a height of 68–1/2 on center above the finished floor.   The hooks for the ironing board, the bracket is set at 59" above the floor, which exceeds the 48 inch maximum. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** iron set height. |
| B301 | **GR 934 – Bathroom – Entry – Clear Opening.**  The clear width of the bathroom door is 31–1/4, which is below the 32 inch minimum. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide one (1) bathroom with a sink that achieves **compliance** to the maximum extent feasible with regard to issues addressed by Plaintiff, *infra,* that pertain to that bathroom.   However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible.   Defendant shall not be required to provide two (2) accessible bathrooms or sinks within the suite.<br><br>***Defendant shall have two and a half (2 ½) years from the date that this decree is fully executed and ordered to modify the suite. |
| B302 | **GR 934 – Bathroom – Entry – Door Hardware.**     The opening hardware disappears when you push the sliding door to the fully open position, which means the | See response to B301. |

| | | |
|---|---|---|
| | operation of the door necessitates the prohibited-required actions of grasping, pinching and twisting of the wrist and/or dual-hand operation. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) Plaintiff demands that in all guestrooms on premises with this condition (i.e., whether or not they are designated as accessible) that Defendant provide a compliant push-plate handle on this door to make operational and to meet the requirements of the CBC and ADAAG | |
| B303 | **GR 934 – Bathroom – Entry – Door Landing.** The door landing on the interior side of the restroom is 47–1/4" between the face of the door and the sink, which is below the 60 inch minimum required. | See response to B301. |
| B304 | **GR 934 – Bathroom – Entry – Turning Circle.** The distance between the face of the sink and the face of the door is 47–1/4", the distance between the front face of the toilet and the face of the wall is 36–1/2" and the distance between the face of the sink and the entry door wall in front of the tub is 43", so there's no turnaround space in this bathroom. (2007-CBC §1115B.3.1; and ADAAG §4.23.3.), making it difficult to impossible for wheelchair users to turn around and exit the bathroom. Plaintiff encountered this barrier and was denied full and equal access in this manner. She demands that for all designated guestrooms specified under this decree, Defendant shall provide compliant clear floor and turning space meeting the requirements of the CBC and ADAAG. | See response to B301. |
| B305 | **GR 934 – Bathroom – Toilet – Front Transfer Space.** Distance from the front of the toilet to the entry door wall is only 36–1/2". | See response to B301. |
| B306 | **GR 934 – Bathroom – Toilet – Centerline Dimension.** The toilet is approximately 17–5/8" on center from the adjacent wall, which is below the 18-inch exact centerline dimension specified by code. | See response to B301. |

| | | |
|---|---|---|
| | (2010-CBC §1115B.4.1(1); and ADAAG 4.17.3 and Fig. 30.) This accurate-dimension provides wheelchair users with a predictable built environment and a learned-leverage point for accomplishing a weighted and partially blind transfer. It is one of the most important specified dimensions under the code for avoiding hazard. Plaintiff demands that all designated rooms specified under this decree have toilet mounted to the exact specified dimension to conform to code. | |
| B307 | **GR 934 – Bathroom – Toilet – Grab Bars Missing.** There are no grab bars for this toilet. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B308 | **GR 934 – Bathroom – Toilet – Seat Height.** The toilet seat is set at a height of 15–1/2" above the finished floor, which is below the 17 – 19 inch range specified by code. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B310 | **GR 934 – Bathroom – Telephone – Clear Floor Space.** The distance from the wall behind the toilet to the outer edge of the telephone mounted on the side on the wall behind the side of the toilet is 31. The toilet projects off the wall a distance of 31–1/4. So the phone is not adjacent to a clear floor ground space. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to approa ch and reach the phone in a readily accessible manner. Plaintiff is affected by this barrier. She demands that Defendant relocate the phone next to a code-compliant clear floor space for all rooms designated for accessibility under this decree. | See response to B301. |
| B311 | **GR 934 – Bathroom – Coat Hook 1 – Height.** The coat hook on the wall opposite the toilet is set at a height of 72–1/2" above the finished floor, which exceeds the 44 | See response to B301. |

| | | |
|---|---|---|
| | inch maximum permitted by code. This reduces the ready usability of the coat hook in a confined and sanitary environment. Plaintiff demands that in all designated rooms under this decree Defendant remount the coat hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | |
| B312 | **GR 934 – Bathroom – Coat Hook 2 – Height.** On the tub side of the toilet the coat hook is set at a height of 71–1/4 above the finished floor. Plaintiff demands that that in all designated rooms under this decree Defendant remount the coat hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | See response to B301. |
| B313 | **GR 934 – Bathroom – Sink – Landing Depth.** The clear floor space in front of the sink is 45–1/2" between the front face of the sink and the entry door wall. The clear floor space in front of the tub is 43" between the face of the sink and the entry door wall beside the tub. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B314 | **GR 934 – Bathroom – Sink – Knee Space.** There is no knee space underneath the sink. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B315 | **GR 934 – Bathroom – Sink – Counter Height.** The height of the sink counter is 34–5/8. (The depth of the sink counter is 30–3/4 inches.) This height exceeds the 34 inch maximum height specified by code. (2010-CBC Figure 11B-1D; and ADA Stds at Figure 31.) This dimension is important to provide ready access to wheelchair users who must reach over the counter to wash their hands <u>within</u> the sink, and avoid spillage. Plaintiff believes she has encountered this particular barrier, or one like it in many guestrooms, and was denied | See response to B301. |

| | | |
|---|---|---|
| | the ready access to which she was entitled. She demands that in all designated rooms, and the new designated rooms to be retrofitted under this decree, Defendant reposition the counter to be at or below the compliant maximum height in conformance with the CBC and ADAAG requirements | |
| B316 | **GR 934 – Bathroom – Sink – Mirror.** The height of the mirror above the sink is 41–3/8" above the finished floor.   This exceeds   the   40   inch   maximum   AFF permitted by code.   (CBC (Aug. 09 rev.) §1115B.8.1.1; and ADAAG 4.19.6.)   This added height makes it difficult to impossible for the wheelchair user, who is seated low, to use the mirror in a normal manner. Plaintiff believes she has encountered this particular barrier condition in this particular suite Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B317 | **GR 934 – Bathroom – Tub – Grab Bars.** There's only one grab bar in the tub. There's a diagonal bar on the back wall of the fixture. The height of the lower end of that bar is 18–1/4" and the height of the upper end of that bar is 27–3/8" above the rim of the tub.   The length of the bar is 24 inches. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B318 | **GR 934 – Bathroom – Tub – Shower Wand.**   There's no shower wand on this shower head.   The distance from the front face of the tub to the mixing valve is approximately 17 inches on center.   The overall width of the tub is 29".   The overall length of the tub is approximately 58". Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B319 | **GR 934 – Sleeping Room – Bed – Lamps – GPT Operation.**   The lamps on the bedside table are toggle type and require | Defendant shall provide lamps that do not require prohibited dextral movements. |

|  | | |
|---|---|---|
|  | grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. |  |
| B320 | **GR 934 – Sleeping Room – Window – GPT Operation.** The opening mechanism for the window requires pinching to operate, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** window opening mechanism. |
| B321 | **GR 934 – Sleeping Room – Window – Height of Controls.** The height of the mechanism is 54–1/2 inches on center. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** height for the window's controls. |
| B322 | **GR 934 – Sleeping Room – Window – Operational Force.** The force pressure required to open the window is approximately 17 pounds and the push pressure required to close the window is over 25 pounds. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will adjust the operational force required to open the window as part of routine maintenance. |
| B323 | **GR 934 – Sleeping Room – Window – Baton Height.** The height of the batons for the shears is 57" above the finished floor, which exceeds the 48 inch (front approach) or 54 inch (side approach) maximums specified by code. (2007-CBC §§ 1117GB.6(5.1) and 1133B.2.5.2; and | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** window baton. |

| | | |
|---|---|---|
| | ADAAG §§ 4.31 and 4.27.3.)  This height places the wands outside the readily accessible height for wheelchair users, and make them difficult to impossible to use from the seated-position.  Plaintiff encountered these barriers and was denied ready access in this manner.  She demands that Defendant provide compliant controls and reach range meeting the requirements of the CBC and ADAAG in all designated room specified under this decree. | |
| B324 | **GR 934 – Sleeping Room – Window – GPT Operation.**  The batons require grasping, pinching and twisting of the wrist to operate, which are operational features prohibited by code.  (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that Defendant provide compliant batons meeting the requirements of the CBC and ADAAG in all designated accessible guestrooms specified under this decree. | See response to B323. |
| B325 | **GR 934 – Sleeping Room – Thermostat – Height.**  The thermostat is located in the northeast corner of the room. It's set at a height of 59" above the finished floor on center.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** thermostat. |
| B326 | **GR 934 – Sleeping Room – Thermostat – Accessible Route and Clear Floor Space.**  The path of travel to the thermostat is obstructed by the couch and the lamp, so there's not a path of travel to it and it is not adjacent to a clear floor ground space.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), to the extent that this condition is replicated, Defendant will solely move the furniture to provide clear floor space. |
| B327 | **GR 934 – Sleeping Room – Thermostat – GPT Operation.**  The operation of the thermostat requires grasping, pinching, | See response to B325. |

| | | |
|---|---|---|
| | twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that in all designated rooms under this decree Defendant provide a compliant thermostat meeting the requirements of the CBC and ADAAG. | |
| B328 | **GR 934 – Sleeping Room – Desk – Knee Space.** The knee space underneath the desk is 26 high. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), to the extent that this condition is replicated, Defendant will provide a desk with **compliant** knee space. |
| B329 | **GR 934 – Sleeping Room – Coffee Maker – Reach Range.** Coffee maker is set on a cabinet that has a height of 37–3/4" above the finished floor and the distance between the front face of the cabinet and the coffee maker is 18" on center. The height of the water hold for the coffee maker above the surface of the counter is — the buttons to push it, 46–1/4" above the finished floor and to put water in the user must reach 21–1/4" across the obstruction. Total depth of this counter is 22 inches. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant shall move the coffee maker to a location where it is within reach range. |
| B331 | **GR 934 – Sleeping Room – Door to Connecting Suite – Locking Mechanism – Height.** Door to the adjacent suite, the locking mechanism is a dead bolt set near the top of the door at a height of 59–1/2 inches above the finished surface. This requirement applies to all guestrooms on premises, i.e., the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.) Plaintiff demands that this condition be addressed in all guestrooms with connecting doors on premises. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** locking mechanism height. |

| | | |
|---|---|---|
| B332 | **GR 934 – Sleeping Room – Door to Connecting Suite – Kick Plate Area.** Kick plate on the push side of the door has a height of 9". The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007-CBC §1113A.5.) This requirement applies to all guestrooms on premises, i.e., the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.) As a wheelchair user, Plaintiff is affected by this condition. Plaintiff demands that Defendant provide a 10 inch kick plate area on all guestrooms doors throughout the hotel, or other compliant surface in conformance with CBC requirements. Plaintiff demands that this condition be addressed in all guestrooms with connecting doors on premises. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide a **compliant** smooth uninterrupted service. |
| B334 | **GR 936 – Entry Door – Locking Mechanism – GPT Operation.** The locking mechanism for the door is a card key that requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands compliant card-key capability for all guestrooms on premises. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will provide a card–key attached to a key ring (through a hole punched at the top of the card), which will allow the user to slip the ring between the upper part of fingers and avoid having to perform the prohibited–required–dextral movements. |
| B335 | **GR 936 – Entry Door – Peephole – Height.** The peephole is set at a height of 59–1/2 above the finished floor, which exceeds the 48 inch maximum specified by code. (2007-CBC §1117GB.6(5.1) and ADAAG 4.27.3.) As a wheelchair user and person of short stature, Plaintiff is significantly affected by this condition. She demands that in all designated guestrooms to be retrofitted or | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), a **compliant** peephole will be provided. |

|  | | |
|---|---|---|
|  | created under this decree that Defendants lower the peephole to no higher than 48 inches (40 inches preferred) as required by CBC and ADAAG. | |
| B336 | **GR 936 – Entry Door – Push Plate.** The push plate on the push side of the door is 9–1/8.     Plaintiff demands that this condition be addressed in all guestrooms on premises. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will provide a **compliant** smooth uninterrupted surface. |
| B337 | **GR 936 – Entry Door – Opening Force.** The push pressure required to open the door is approximately 12 pounds.     Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), the door pressure will be modified during routine maintenance. Defendant will also adopt a policy, practice, and procedure requiring that push pressure be checked and adjusted during routine maintenance. |
| B338 | **GR 936 – Entry Door – Strike Edge Clearance – Pull Side.**     Strike edge clearance on the inside of the door is 17–1/2. This is far below the 18 inch minimum required by code. (2007-CBC §1133B.2.4.3; and ADAAG at §4.13.6 & Figure 25.) This requirement applies to all guestrooms on premises, i.e., the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.) This condition discriminates against wheelchair users by making it impossible to position the wheelchair a location where the door can swing upon without striking the chair, and makes it much more difficult, if not impossible, to go through the door independently.   In her various stays at the hotel for convention gatherings, Plaintiff has encountered variations of this condition repeatedly and has been affected in this manner.   She demands that Defendants reconfigure the vestibules and entries of all guestrooms on premises to provide no less than 18 inches of | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will attempt to achieve **compliant** strike edge clearance to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |

| | | |
|---|---|---|
| | strike side clearance on the side to which the door swings, and in full conformance with CBC and ADAAG requirements, or provide accomplish access through another compliant means such as automatic door openers. | |
| B339 | **GR 936 – Entry Door – Pull Side Landing.** The interior door landing is obstructed by the chair in the living room set, which is set at a distance of 46–1/2" from the face of the door.   Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will attempt to provide a **compliant** landing to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B340 | **GR 936 – Entry Door – Dead Bolt Height.** The height of the dead bolt on the interior side of the door is 59–1/2.   The dead bolt is 59–1/2 inches on the interior side of 936 door.   Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will provide a **compliant** lock height. |
| B342 | **GR 936 – Sleeping Room – Path of Travel – Obstruction.**  The path of travel into the room from the front door is obstructed by the large living room chair, which is set 29" from the wall.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will modify the placement of the furniture to provide an appropriate path of travel. |
| B343 | **GR 936 – Sleeping Room – Path of Travel – Obstruction.**  Path of travel back to that lamp and the phone on the end table is 30–1/2 between the corner of the chair and the raised counter with the ice bucket on it.  The distance from the table to the chair is 22".  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will modify the placement of the furniture to provide an appropriate path of travel. |

| | | |
|---|---|---|
| B344 | **GR 936 – Sleeping Room – Thermostat – GPT Operation.** Thermostat for this room requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), to the extent that this condition is replicated, Defendant will provide a **compliant** thermostat. |
| B345 | **GR 936 – Sleeping Room – Thermostat – Height.** The height of the thermostat is 59 inches above the finished floor. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B344. |
| B346 | **GR 936 – Sleeping Room – Thermostat – Landing.** The distance from the back of the chair to the wall that the thermostat is mounted on, which is the path of travel to the thermostat, is a maximum of 18–1/2". Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will modify the placement of the furniture to provide an appropriate path of travel and landing to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B347 | **GR 936 – Sleeping Room – Light Switch – Landing.** The distance from the back of the chair to the wall that the light switch for the chandelier is mounted on, which is the path of travel to the switch, is a maximum of 18–1/2". Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will modify the placement of the furniture to provide an appropriate path of travel and landing to the maximum extent feasible. |

| | | However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
|---|---|---|
| B348 | **GR 936 – Sleeping Room – Window – Operational Force.** There is a window. This window is operable/openable. The push pressure required to open the window is approximately 7 pounds of pressure. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will adjust the operational force required to open the window as part of routine maintenance. |
| B349 | **GR 936 – Sleeping Room – Window – Batons – Height.** Batons for the shears and the drapes are set at a height of 57–3/4 inches above the finished floor, which exceeds the 48 inch (front approach) or 54 inch (side approach) maximums specified by code. (2007-CBC §§ 1117GB.6(5.1) and 1133B.2.5.2; and ADAAG §§ 4.31 and 4.27.3.) This height places the wands outside the readily accessible height for wheelchair users, and makes them difficult to impossible to use from the seated-position. Plaintiff has encountered this barrier in many guestrooms and was denied ready access in this manner. She demands that for all designated rooms specified under this Decree, Defendant shall provide compliant controls and reach range meeting the requirements of the CBC and ADAAG. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will provide a **compliant** window baton. |
| B350 | **GR 936 – Sleeping Room – Standing Lamp – GPT Operation.** The standing lamp beside the couch has a twist type control that requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that this condition be addressed in the designated | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will provide **compliant** lamps that do not require grasping, pinching and twisting. |

|  |  | accessible suite specified in this decree. |  |
|---|---|---|---|
| B351 | **GR 936 – Sleeping Room – Ice Bucket – Reach Range – Across an Obstruction.** The raised counter with the ice bucket on it has a height of 41–3/8, which is a reach across an obstruction.   Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant shall move the ice bucket to a location where it is within reach range. |  |
| B352 | **GR 936 – Sink Outside Bathroom – Sink – Kneespace.**  The height of the kneespace at the front space is 27–3/4" and the height of the knee space approximately 8 inches back from the front face is 24" above the finished floor. | See response to B301. |  |
| B353 | **GR 936 – Sink Outside Bathroom – P-Trap.**  The P trap is set at a distance from the wall of approximately 8–1/2", which exceeds the 6 inch maximum specified by code.   (2007-CBC, Figure 11B-1D, and is identical in ADAAG.)   The purpose of this requirement is to make sure the P-Trap does not intrude into the knee space.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |  |
| B354 | **GR 936 – Sink Outside Bathroom – Insulation.**  There is no insulation provided on the hot water and drain pipes under this sink.   This code requirement is designed to help prevent burns and scraping on the legs of wheelchair users.     (2007–CBC §1115B.4.3(4); and ADAAG §4.19.4.) This is a particular hazard for wheelchair users who lack feeling in their legs.     Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |  |
| B355 | **GR 936 – Sink Outside Bathroom – Mirror Height.**  The height of the mirror is approximately 41" above the finished floor.  This exceeds the 40 inch maximum AFF permitted by code.   (CBC (Aug. 09 | See response to B301. |  |

|  |  |  |
|---|---|---|
|  | rev.) §1115B.8.1.1; and ADAAG 4.19.6.) This added height makes it difficult to impossible for the wheelchair user, who is seated low, to use the mirror in a normal manner.   Plaintiff has encountered this particular barrier condition in visiting the guestrooms of other convention goers, and was denied access in this manner.   Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. |  |
| B356 | **GR 936 – Sink Outside Bathroom – Towel Bar – Mounting Height.**  The height of the front approach towel bar at the north end of the sink is approximately 54 inches above the finished floor.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B357 | **GR 936 – Sink Outside Bathroom – Landing.**  The clear floor space in front of the sink is 41–5/8" from the front face of the sink to the opposing wall.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B358 | **GR 936 – Closet – Door – Clear Opening.**  The clear opening for the door is 31–1/2".  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 934 or another room (at Defendant's discretion), Defendant will provide at least one **compliant** closet to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible.   Defendant also reserves the right to move the location of the closet, and/or provide a different type of compliant closet. |

| B359 | **GR 936 – Closet – Door – Hardware – GPT Operation.** This door does not have u–shaped hardware on it so the user has to grasp and pinch the door to get it opened and closed, which are operational hardware features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B358. |
|---|---|---|
| B360 | **GR 936 – Closet – Door – Landing.** The door landing for the closet door is 41–5/8" from the front face of the sink to the face of the door. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B358. |
| B361 | **GR 936 – Closet – Clothes Rod – Height.** The height of the clothes rod is 65" above the finished floor, which both significantly exceeds the 54 inch maximum height specified by code. (2007-CBC §§ Sections1118B.5 and 1118B.6, 1125B.3, and Figure 11B-5D; and ADAAG §§ 4.2.5, 4.2.6, 4.25.3, Fig. 5 and Fig 6.) This height makes it difficult to impossible for the seated wheelchair user to access. Plaintiff has encountered this barrier within the hotel's suites, and was denied full, equal and safe facilities in this manner. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will provide **compliant** shelf and clothes rod heights within the closet it designates. |
| B362 | **GR 936 – Closet – Shelf – Height.** The height of the shelf is 68" above the finished floor, which both significantly exceeds the 54 inch maximum height specified by code. (2007-CBC §§ Sections1118B.5 and 1118B.6, 1125B.3, and Figure 11B-5D; and ADAAG §§ 4.2.5, 4.2.6, 4.25.3, Fig. 5 and Fig 6.) This height makes it difficult to impossible for the seated wheelchair user to access. Plaintiff has encountered this barrier | See response to B361. |

|  | | |
|---|---|---|
|  | within the hotel's suites, and was denied full, equal and safe facilities in this manner. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | |
| B363 | **GR 936 – Closet – Iron Set – Height.** The height of the iron is 67" above the finished floor on center. The height of the bracket for the ironing board is 57–3/4. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | Defendant agrees that in the suite that it designates as accessible, whether it is room 936 or another room (at Defendant's discretion), Defendant will provide a **compliant** ironing set height. |
| B364 | **GR 936 – Bathroom – Entry – GPT Operation.** The hardware disappears when the pocket door is fully opened. The only way to close this door is to actually grasp it and lift it, and you have to grasp the back of the door to do this. These are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree | See response to B301. |
| B365 | **GR 936 – Bathroom – Turning Space.** The distance from the south corner of the sink to the corner of the wall is 22, and to the doorjamb is 28–1/2 and the distance between the toilet and the tub is 31", so it is not possible to inscribe inside the bathroom the 60" diameter turning circle required by code. (2007-CBC §1115B.3.1; and ADAAG §4.23.3.). This makes it difficult to impossible for wheelchair users to turn around and exit. Plaintiff believes she has encountered this particular barrier within this room, or in another like it, and was denied full and equal access in this manner. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |

| B366 | **GR 936 – Bathroom – Sink – Landing.** The distance from the south corner of the sink to the corner of the wall is 22, and to the doorjamb is 28–1/2.  Also, the trash can projects off the wall, narrowing the clear floor space in front of the sink to 19". Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
|---|---|---|
| B367 | **GR 936 – Bathroom – Sink – Kneespace.** In front of the sink there's no knee space under this sink on the interior of the bathroom.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B368 | **GR 936 – Bathroom – Toilet – Seat Height.** The height of the toilet seat is 15–1/2" .  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B369 | **GR 936 – Bathroom – Toilet – Grab Bars Missing.**   There are no grab bars in this bathroom.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B370 | **GR 936 – Bathroom – Toilet – Side Transfer Space.**  The distance from the edge of the toilet to the edge of the tub is 31" .  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B371 | **GR 936 – Bathroom – Telephone – Landing.** The distance from the edge of the toilet to the edge of the tub is 31", so there is no accessible route to the phone. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B372 | **GR 936 – Bathroom – Robe Hook 1 – Height.**  The height of the robe hook beside the tub is 72 inches, which exceeds the 44 inch maximum permitted by code.  This reduces the ready usability of the coat hook in a confined and sanitary environment. | See response to B301. |

|  | Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. |  |
|---|---|---|
| B373 | **GR 936 – Bathroom – Robe Hook 2 – Height.**  Coat hook between the shower and the sink is 72" above the floor.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B374 | **GR 936 – Bathroom – Tub – Grab Bars - Missing.**  No grab bars have been provided in this bathtub.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B375 | **GR 936 – Bathroom – Tub – GPT Operation.**   The diverter valve requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code.    (2010-CBC §1117B.6(4);  and ADAAG §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |
| B377 | **GR 936 – Bathroom – Tub – Shower Wand.**  There's no shower wand provided. Plaintiff demands that this condition be addressed in the designated accessible suite specified in this decree. | See response to B301. |

| B378 | **GR 703 – Entry – Card Key Locking Mechanism – GPT Operation.** The locking mechanism for the door is a card key that requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code.    (2010-CBC | For all non-suite accessible guestrooms, Defendant will provide a card–key attached to a key ring (through a hole punched at the top of the card), which will allow the user to slip the ring |
|---|---|---|

| | | |
|---|---|---|
| | §1117B.6(4); and ADAAG §9.2.2.)   It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.   Plaintiff demands that Defendant provide a compliant card-key attached to a key ring in order to meet the requirements of the CBC and ADAAG. (See Page 3 at ¶0, supra.) | between the upper part of fingers and avoid having to perform the prohibited–required–dextral movements. |
| B379 | **GR 703 – Entry – Peephole – Height.** The peephole is set at a height of 44", the upper peephole is 59–1/2" above the finished floor, which exceeds the 48 inch maximum specified by code.   (2007-CBC §1117GB.6(5.1) and ADAAG 4.27.3.) As a wheelchair user and person of short stature, Plaintiff is significantly affected by this condition.   She has encountered this condition and demands that in all designated guestrooms Defendants lower the peephole to no higher than 48 inches (40 inches preferred) as required by CBC and ADAAG. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant peephole height. |
| B380 | **GR 703 – Entry – Push Plate Height.** The push plate at the bottom of the door is 8–3/8 inches. The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007-CBC §1113A.5.) Plaintiff has encountered this barrier-risk in the designated accessible rooms at the hotel. She demands that Defendant provide a 10 inch kick plate or other compliance surface in conformance with CBC requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a **compliant** smooth uninterrupted service. |
| B381 | **GR 703 – Entry – Opening Force.** Push pressure required to open the door is approximately 16 pounds, which significantly exceeds the 5 lbs. maximum permitted by code, and is typical. (2007-CBC §1133B.2.5.)   This barrier discriminates against wheelchair users by making it more difficult to impossible to go through the door without assistance. Plaintiff has encountered this condition in | For all non-suite accessible guestrooms, the door pressure will be modified during routine maintenance. Defendant will also adopt a policy, practice, and procedure requiring that push pressure be checked and adjusted during routine maintenance for all accessible rooms. |

| | | |
|---|---|---|
| | many of the guestrooms on premises, which are <u>all</u> required to be accessible. She demands that Defendants adjust all guestroom entrances so that the amount of push pressure required to operate is no more than 5 lbs. | |
| B382 | **GR 703 – Entry – Push Side Strike Edge Clearance.**   The exterior strike edge clearance on the push-side is 3–1/2", for a door with a closer and a latch. This is far below the 12 inch minimum required by code.   (2010-CBC §1126A.3.2.1(3); and ADAAG at §4.13.6 & Figure 25.)   This requirement applies to all guestrooms on premises, i.e., the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.)  This barrier discriminates against wheelchair users by making it impossible to position the wheelchair a location where they can operate the latch and then reposition themselves to go through the door.   Plaintiff has encountered this barrier at many guestroom entries and was affected in such a manner. She demands that Defendants reconfigure the vestibule, or the swing of the door, for all guestrooms on premises with this condition to provide no less than 12 inches of strike side clearance on the push side, and in full conformance with CBC and ADAAG requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide compliant strike edge clearance to maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B383 | **GR 703 – Entry – Security Latch – Mounting Height.**   The height of the security latch is 59–3/8 inches above the finished floor.   Door hardware must be centered between 30" and 44" above the floor.   (2007-CBC §1133B.2.4.2 and ADAAG §4.13.9.)   This applies to all guestrooms on premises.   (See 2007-CBC §111B.4.2.3.2.)  Both as a wheelchair user and a person of short stature that sometimes relies upon hand-crutches, Plaintiff is significantly affected by this reach-range condition.   She demands that Defendants lower the security latch in all guestrooms on premises to conform to ADAAG and the | For all non-suite accessible guestrooms, Defendant will provide a **compliant** security latch height. |

| | | |
|---|---|---|
| | CBC. | |
| B384 | **GR 703 – Entry – Do Not Disturb Flag – Temporary Storage Sleeve – Mounting Height.** The Do Not Disturb flag is set at a height of top is set at 48–1/2 is the bottom, which is above the 40 inch maximum specified by code. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will modify the height of the do not disturb flag, or provide a new one. |
| B385 | **GR 703 – Entry – Do Not Disturb Flag – GPT Operation.** The Do Not Disturb flag requires grasping, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide  compliant Flag attached to a key ring in order to   meet the requirements of the CBC and ADAAG. | Defendant will punch a hole at the top of the card and put a ring in the hole, which will allow the user to slip the ring between the upper part of fingers and avoid having to perform the prohibited–required–dextral movements. |
| B386 | **GR 703 – Entry – Dead Bolt – GPT Operation.**  The dead bolt on the door requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide a compliant deadbolt meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms, Defendant will provide a **compliant** locking mechanism. |
| B387 | **GR 703 – Entry – Interior Landing.** The interior door landing is 45–3/4" between the wing wall and the face of the closed door. On the strike side of the door, the total depth of the door landing, which is the distance between the face of the wall and the outside | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant interior landing to the maximum extent feasible. However, no modification will be required that would affect any |

| | | |
|---|---|---|
| | edge of the closet, is 56 inches. These conditions are less than the 60 inch minimum required by code to provide wheelchair users with the space required to position themselves and their chair outside the swing when operating the door. (2007-CBC §§ 1127A.1 and 1127A.2; and ADAAG §§ 4.13 and 4.22.2.) Plaintiff in affected by this condition in this manner. She demands that Defendant reconfigure the space to provide a door landing that complies with CBC and ADAAG requirements, or provide an automatic door opener. | significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B388 | **GR 703 – Entry – Coat Hook – Mounting Height.** Behind the door there is a coat hook. Height of the coat hook is 54–3/4", which exceeds the 44 inch maximum permitted by code. This reduces the ready usability of the coat hook in a confined and sanitary environment. Plaintiff demands that Defendant remount the hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a **compliant** coat hook. |
| B389 | **GR 703 – Bathroom – Entry – Operational Force.** Push pressure required to close the door is approximately 7 pounds of pressure to close it and to open it the push pressure is 6 pounds, which exceeds the 5 lbs. maximum permitted by code, and is typical. (2007-CBC §1133B.2.5.) This barrier discriminates against persons with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance. On information and belief, Plaintiff has encountered this particular condition, or one like it in other guestrooms, and was affected in this manner. She demands that Defendants adjust this entrance so that the amount of push pressure required to | For all non-suite accessible guestrooms, the door pressure will be modified during routine maintenance. Defendant will also adopt a policy, practice, and procedure requiring that push pressure be checked and adjusted during routine maintenance for all accessible rooms. |

| | | operate is no more than 5 lbs. | |
|---|---|---|---|
| | B390 | **GR 703 – Bathroom – Turning Space.** The distance between the face of the toilet and the shower is approximately 58", so it is not possible to inscribe the required 60" diameter circle within the restroom. (2007-CBC §1115B.3.1; and ADAAG §4.23.3.) Plaintiff encountered this barrier and was denied full and equal access in this manner.   She demands that Defendant renovate the room to provide compliant clear floor and turning space meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide compliant turning space to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| | B391 | **GR 703 – Bathroom – Sink – Mounting Height.** The height of the sink is 36–1/4, exceeding the 34 inch maximum height specified by code. (2010-CBC Figure 11B-1D; and ADA Stds at Figure 31.)   This dimension is important to provide ready access to wheelchair users who must reach over the counter to wash their hands <u>within</u> the sink, and avoid spillage.   Plaintiff believes she has encountered this particular barrier or one like it in another designated room, and was denied the ready access to which she was entitled.  She demands that Defendant reposition the counter to be at or below the compliant maximum height in conformance with the CBC and ADAAG requirements | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a sink of **compliant** height. |
| | B393 | **GR 703 – Bathroom – Sink – P-Trap.** The distance that the P trap projects off the rear wall is 8" approximately, which exceeds the 6 inch maximum specified by code. (2007-CBC, Figure 11B-1D, and is identical in ADAAG.) The purpose of this requirement is to make sure the P-Trap does not intrude into the knee space. Plaintiff believes she encountered this barrier or one like it in another designated room, and was denied ready access in this manner.   She demands that Defendant | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a sink with **compliant** knee space. |

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 98 of 122

| | | |
|---|---|---|
| | reconfigure the P-Trap projection in conformance with CBC and ADAAG requirements. | |
| B394 | **GR 703 – Bathroom – Sink – Insulation.** This pipe is only partially wrapped for the drain. There is no wrapping on the hot water feed. The code requires both to be fully wrapped. (2007-CBC §1115B.4.3(4); and ADAAG §4.19.4.) This is a particular hazard for wheelchair users who lack feeling in their legs. Plaintiff encountered this barrier-risk in the designated rooms and was denied full, equal and safe facilities in this manner. She demands that Defendants insulate this area per CBC and ADAAG requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a sink with **compliant** insulation. |
| B395 | **GR 703 – Bathroom – Sink – Mirror – Mounting Height.** The height of the mirror above the sink counter is 40–3/4". This exceeds the 40 inch maximum AFF permitted by code. (CBC (Aug. 09 rev.) §1115B.8.1.1; and ADAAG 4.19.6.) This added height makes it difficult to impossible for the wheelchair user, who is seated low, to use the mirror in a normal manner. Plaintiff believes she encountered this particular barrier condition, or within other designated accessible guestrooms. She demands that Defendant provide a compliant mirror meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms, Defendant will provide a mirror of **compliant** height. |
| B396 | **GR 703 – Bathroom – Sink – Towel Rack.** The towel rack above the sink is 54–3/4" above the ground. | For all non-suite accessible guestrooms, Defendant will provide a towel rack of **compliant** height. |
| B397 | **GR 703 – Bathroom – Toilet – Side Transfer Space.** The distance from the end of the sink counter to the edge of the toilet is 10–3/8". | See Response to B390. |

| B398 | **GR 703 – Bathroom – Toilet – On-Center Dimension.** The toilet is 18–1/4 on center from the adjacent wall, which exceeds the 18-inch exact centerline dimension specified by code. (2010-CBC §1115B.4.1(1); and ADAAG 4.17.3 and Fig. 30.) This accurate-dimension provides wheelchair users with a predictable built environment and a learned-leverage point for accomplishing a weighted and partially blind transfer. It is one of the most important specified dimensions under the code for avoiding hazard. Plaintiff has encountered this barrier-risk within rooms this or other designated accessible guestrooms and was denied ready access in this manner. She demands that Defendant remount the toilet to the exact specified dimension to conform to code. This may be accomplished by adjusting the toilet within its existing fittings, or through the use an off-set flange. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a **compliant** center-line dimension on the toilet seat. |
| B399 | **GR 703 – Bathroom – Toilet – Side Grab Bar – Projection.** The distance from the wall behind the toilet to the leading edge of the grab bar is 50–1/4", which is less than the 54 inch minimum required by the code. (ADAAG §4.17.6 and Figure 30.) It also projects less than the 24 inch minimum projection required by the code. (2007-CBC §1115B.4.1(3)(3.1).) This barrier discriminates against wheelchair users by reducing the usability and effectiveness of the grab bar in getting onto and off the fixture. On information and belief, Plaintiff has encountered this barrier within the designated rooms and has been denied ready access in this manner. She demands reposition the grab bar in all designated rooms so that it projects appropriately in front of the toilet in conformance with CBC and ADAAG requirements. | For all non-suite accessible guestrooms, Defendant will provide a **compliant** side grab bar. |

| B400 | **GR 703 – Bathroom – Toilet – Side Grab Bar – Obstruction.** The distance from the bottom of the phone to the top of the grab bar, is approximately 4 inches and the projection of the phone off the wall is 5–1/2, which obstructs the usable length of the grab bar in violation of code. (2007-CBC §§ 1115B.4.1(1) and 1115.7.1; and ADAAG §§ 4.16.4, 4.26.2 & Fig. 29.) This is a safety hazard affecting wheelchair users while at their most vulnerable. Plaintiff encountered has this barrier-risk in the designated rooms and was denied full and equal access in this manner. She demands that Defendant provide compliant and unobstructed grab bars meeting the requirements of the CBC and ADAAG | For all non-suite accessible guestrooms, Defendant will remove the bathroom phone. |
| B401 | **GR 703 – Bathroom – Toilet – Side and Rear Grab Bars – Mounting Height.** The mounting height of the side grab bar is 33–5/8, and the rear grab bar is mounted at a height of 32" above the finished floor. Both do not conform to the 33 inch exact on-center dimension specified by Title 24. (2010-CBC §1115B.7 and Figure 11B-1A.) The code-specified height is the optimal position for leveraging a transfer, and provides the wheelchair user with predictability in the built environment, and thereby helps in avoiding hazard. On information and belief, Plaintiff has encountered this particular barrier within the designated rooms and was suffered this barrier-risk in this manner. She demands that Defendants remount the grab bars to conform to the CBC. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide **compliant** side grab bars. |
| B402 | **GR 703 – Bathroom – Coat Hook – Mounting Height for Restricted Front Approach.** The coat hook, which has a restricted front approach, is adjacent to the shower, and is set at a height of 54", which exceeds the 44 inch maximum permitted by code. This reduces the ready usability of the coat hook in a confined and sanitary environment. Plaintiff demands that | For all non-suite accessible guestrooms where this condition is replicated, Defendant will solely provide a coat hook of compliant mounting height. |

| | | |
|---|---|---|
| | Defendant remount the hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | |
| B403 | **GR 703 – Bathroom – Shower Stall – Width.** The width of the shower is 32–1/2" to the interior edge of the threshold. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant shower stall width to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B404 | **GR 703 – Bathroom – Shower Stall – Threshold – Height.** The height of the threshold is 1–1/16 on the outside and on the inside it is 1–1/8". The exterior edge is 34–3/4. (2007–CBC §1133B.2.4.1; and ADAAG §4.13.8.) This condition makes it extremely difficult for wheelchair users to cross. Plaintiff believes she has encountered this particular barrier, or one like in other designated accessible rooms, and that she was denied ready access in this manner. She demands that Defendant provide a compliant threshold conforming to the CBC and ADAAG. | For all non-suite accessible guestrooms with roll-in showers where this condition is replicated, Defendant will provide a **compliant** threshold. |
| B405 | **GR 703 – Bathroom – Shower Stall – Bench.** The height of the bench above the floor is 17 inches above the floor in the interior. The width of the shower bench is 14–1/2 in the leg of the L, and base of the L is 21. The width of the base of the L is 13–3/8. The shower bench and the tile that it is mounted upon moves 3/4 of an inch within its' fittings, so this thing is not firmly attached to the wall. | For all non-suite accessible guestrooms with roll-in showers where this condition is replicated, Defendant will provide a **compliant** shower bench. |

| B406 | **GR 703 – Bathroom – Shower Stall – Grab Bar – Mounting Height.** The mounting height of the grab bar is 34–1/2" above the drain. | For all non-suite accessible guestrooms with roll-in showers where this condition is replicated, Defendant will provide **compliant** grab bars. |
| --- | --- | --- |
| B407 | **GR 703 – Bathroom – Shower Stall – Wand Slide Bar.** The shower wand is on a slide bar that moves 2–5/8 to 3–1/2". | For all non-suite accessible guestrooms with roll-in showers where this condition is replicated, Defendant will provide a **compliant** shower spray unit. |
| B408 | **GR 703 – Bathroom – Shower Stall – Wand – Length.** The length of the shower wand hose is 58–3/4". | See response to B407. |
| B409 | **GR 703 – Bathroom – Shower Stall – Soap Dish.** The soap dish is set in the corner opposite the shower bench at a height of 56–1/2 inches above the door. The diagonal reach from the shower bench to the soap dish is 51 inches. | For all non-suite accessible guestrooms with roll-in showers where this condition is replicated, Defendant will provide a **compliant** soap dish. |
| B410 | **GR 703 – Bathroom – House Phone – Landing.** The distance from the wall behind the toilet to the leading edge of the phone is 31, and the back edge is 27", which means that the house phone is not mounted adjacent to a compliant clear floor space. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to approach and reach the phone in a readily accessible manner. Plaintiff has encountered this barrier and was denied ready access in this manner. She demands that Defendant relocate the phone next to a code-compliant clear floor space. | For all non-suite accessible guestrooms where this issue is replicated, Defendant will remove this phone. |
| B412 | **GR 703 – Sleeping Room – Door to Adjacent Suite – Strike Edge Clearance.** The strike edge clearance for the door to the adjacent suite is 7–1/2", which is far below the 18 inch minimum required by code. (2007-CBC §1133B.2.4.3; and ADAAG at §4.13.6 & Figure 25.) This requirement applies to all guestrooms on premises, i.e., | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide compliant strike edge clearance to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing |

| | | |
|---|---|---|
| | the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.) This condition discriminates against wheelchair users by making it impossible to position the wheelchair a location where the door can swing upon without striking the chair, and makes it much more difficult, if not impossible, to go through the door independently. In her various stays at the hotel for convention gatherings, Plaintiff has encountered this condition repeatedly and has been affected in this manner. She demands that Defendants renovate the connecting doors and/or furniture layouts as necessary for of all guestrooms on premises to provide no less than 18 inches of strike clearance on the side to which the door swings, and in full conformance with CBC and ADAAG requirements. | or electrical features of the building, and/or where the modification would be technically infeasible. |
| B413 | **GR 703 – Sleeping Room – Door to Adjacent Suite – Security Latch – Mounting Height.** The height of the security latch between the adjacent suite is 63–3/4. Door hardware must be centered between 30" and 44" above the floor. (2007-CBC §1133B.2.4.2 and ADAAG §4.13.9.) This applies to all guestrooms on premises. (See 2007-CBC §111B.4.2.3.2.) Both as a wheelchair user and a person of short stature that sometimes relies upon hand-crutches, Plaintiff is significantly affected by this reach-range condition. She demands that Defendants lower the security latch in all guestrooms on premises to conform to ADAAG and the CBC. | For all non-suite accessible guestrooms, Defendant will provide a **compliant** security latch height. |

| B414 | **GR 703 – Sleeping Room – Door to Adjacent Suite – Dead Bolt – Mounting Height.** The height of the dead bolt is 59–1/4". See previous re door hardware. She demands that Defendants lower the dead bolt in <u>all</u> guestrooms on premises to conform to ADAAG and the CBC. | For all non-suite accessible guestrooms, Defendant will provide a **compliant** dead bolt height. |
|---|---|---|
| B415 | **GR 703 – Sleeping Room – Door to Adjacent Suite – Landing.** The distance between the face of the door and the opposite wall is 56–1/2, which is the length of the clear landing for the door. This is less than the 60 inch minimum required by code to provide wheelchair users with the space required to position themselves and their chair outside the swing when operating the door. (2007-CBC §§ 1127A.1 and 1127A.2; and ADAAG §§ 4.13 and 4.22.2.) Plaintiff is affected in this manner. She demands that Defendants reconfigure the space to provide a door landing that complies with CBC and ADAAG requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant landing to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B416 | **GR 703 – Sleeping Room – Door to Adjacent Suite – Push Plate.** The push plate for the door between the adjacent suite and this room is 9". The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007-CBC §1113A.5.) This requirement applies to all guestrooms on premises, i.e., the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.) Plaintiff has encountered this barrier-risk within the designated accessible rooms. She demands that for all guestrooms on premises that Defendant provide a 10 inch kick plate or other compliance surface in conformance with | For all non-suite accessible guestrooms, Defendant will provide a **compliant** smooth uninterrupted service. |

| | | | |
|---|---|---|---|
| | CBC requirements. | | |
| B417 | **GR 703 – Sleeping Room – Closet – Door – GPT Operation.** Again, the closet is a bi–fold door opener, requires grasping of the actual door to close it, which are operational features prohibited by code.   (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)   It is non-compliant with the code that requires that door hardware not require grasping, pinching, or twisting of the wrist (GPT) to operate.   Plaintiff demands that Defendant provide compliant controls and doors satisfying the GPT prohibition of the CBC and ADAAG. | For all non-suite accessible guestrooms, Defendant will provide **compliant** hardware for the closet so that it may opened and closed without pinching or grasping. | |
| B418 | **GR 703 – Sleeping Room – Closet – Clothes Rod – Mounting Height.**   The height of the clothes rod is 50 inches.   The height of the — at the east end of the clothes rod the height of the clothes rod is above 50".   Also, this clothes rod is not firmly attached to the wall and consequently moves. The height significantly exceeds the 54 inch maximum height specified by code. (2007-CBC   §§   Sections1118B.5   and 1118B.6, 1125B.3, and Figure 11B-5D; and ADAAG §§ 4.2.5, 4.2.6, 4.25.3, Fig. 5 and Fig 6.)   This height makes it difficult to impossible for the seated wheelchair user to access.  Plaintiff has encountered this barrier within the designated accessible rooms, and was denied full, equal and safe facilities in this manner.   She demands that Defendant lower the bar to a compliant reach range meeting the requirements of the CBC and ADAAG.   The bar also needs to be firmly attached. | For all non-suite accessible guestrooms, Defendant will provide **compliant** shelf and clothes rod heights within the closet. | |
| B419 | **GR 703 – Sleeping Room – Closet – Iron Set – Mounting Height.**  The height of the iron is set at 67–1/2".  The bracket for the ironing board is 58". | For all non-suite accessible guestrooms, Defendant will provide a **compliant** ironing set height. | |

| B420 | **GR 703 – Sleeping Room – Thermostat – GPT Operation.** The thermostat requires grasping, pinching, twisting of the wrist to operate, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide a compliant thermostat meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms, Defendant will provide a **compliant** thermostat. |
|---|---|---|
| B423 | **GR 703 – Sleeping Room – Desk – Kneespace.** The knee space provided underneath the desk is 25–3/4". | For all non-suite accessible guestrooms, Defendant will provide a desk with **compliant** knee space. |
| B424 | **GR 703 – Sleeping Room – Desk – Brochures – Required Reach Back Across an Obstruction.** There are brochures on the desk top that are set approximately 24" back across the table, on center. | For all non-suite accessible guestrooms, Defendant will place brochures within **compliant** reach range. |
| B425 | **GR 703 – Sleeping Room – Window – GPT Operation.** The mechanism requires grasping, pinching to operate. It's a twin action required, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide a compliant window operation meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a **compliant** opening mechanism for the window. |
| B426 | **GR 703 – Sleeping Room – Window – Opening Force.** The force required to operate the window, to open it, is approximately 7 pounds. To close it, the push pressure is 9 pounds approximately. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will adjust the push pressure on the window as part of routine maintenance. |

| B427 | **GR 703 – Sleeping Room – Window – Batons – Mounting Height.** The batons for the shears and the drapes are set at approximately 57 inches above the finished floor, which exceeds the 48 inch (front approach) or 54 inch (side approach) maximums specified by code. (2007-CBC §§ 1117GB.6(5.1) and 1133B.2.5.2; and ADAAG §§ 4.31 and 4.27.3.) This height places the wands outside the readily accessible height for wheelchair users, and makes them difficult to impossible to use from the seated-position. Plaintiff has encountered this barrier in the designated rooms and was denied ready access in this manner. She demands that Defendant provide compliant controls and reach range meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide **compliant** window batons. |
| B428 | **GR 703 – Sleeping Room – Window – Batons – GPT Operation.** These batons require grasping, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant batons meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms, Defendant will provide **compliant** window batons. |
| B429 | **GR 703 – Sleeping Room – Lamp – GPT Operation.** This lamp has a twist type control on it, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide a compliant lamp meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms, Defendant will provide **compliant** lamps that do not require grasping, pinching, or twisting. |
| B430 | **GR 703 – Sleeping Room – Cabinet – Ice Bucket & Coffee Maker – Required Reach Back Across an Obstruction.** The counter with water, the ice bucket is set at a height of 37–3/4 inches above the finished floor, | For all non-suite accessible guestrooms, Defendant will provide an ice bucket and coffee maker within reach range. |

| | | |
|---|---|---|
| | which is a reach across an obstruction. The reach back across the obstruction is 20–1/2". The height of the ice bucket above the surface is 6–1/2 inches, and in the lifted up position the height is 7 inches approximately. The height of the dispenser with the coffee with the water open is 12 inches above the counter, and the reach back is 21–1/2 back. | |
| B432 | **GR 503 – Entry Door – Height of Peephole.** The height of the top peephole is set at 59–5/8 an d the bottom one is set at 43–7/8", which exceeds the 48 inch maximum specified by code. (2007-CBC §1117GB.6(5.1) and ADAAG 4.27.3.) As a wheelchair user and person of short stature, Plaintiff is significantly affected by this condition. She has encountered this condition and demands that in all designated guestrooms Defendants lower the peephole to no higher than 48 inches (40 inches preferred) as required by CBC and ADAAG. | See response to B379. |
| B433 | **GR 503 – Entry Door – Kickplate.** The height of the kick plate is 9–1/4". The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007-CBC §1113A.5.) As a wheelchair user, Plaintiff is affected by this condition. Plaintiff demands that Defendant provide a 10 inch kick plate area on all guestrooms doors throughout the hotel, or other compliant surface in conformance with CBC requirements. | See response to B380. |
| B435 | **GR 503 – Entry Door – Operational Force.** The push pressure required to open the door is 17 pounds to open, which exceeds the 5 lbs. maximum permitted by code, and is typical. (2007-CBC §1133B.2.5.) This barrier discriminates against persons with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff and her specific disabilities (hereafter | See response to B381. |

| | | |
|---|---|---|
| | referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance. On information and belief, Plaintiff has encountered this particular condition, or one like it in other guestrooms, and was affected in this manner. She demands that Defendants adjust this entrance so that the amount of push pressure required to operate is no more than 5 lbs. | |
| B436 | **GR 503 – Entry Door – Pull–Side Interior Door Landing.** The door landing on the interior side is 45" on the south side of the door, which is less than the 60 inch minimum required by code to provide wheelchair users with the space required to position themselves and their chair outside the swing when operating the door. (2007-CBC §§ 1127A.1 and 1127A.2; and ADAAG §§ 4.13 and 4.22.2.) Plaintiff has been denied access in the designated accessible guestrooms in this manner. She demands that Defendant reconfigure the space to provide a door landing that complies with CBC and ADAAG requirements. | See response to B387. |
| B437 | **GR 503 – Entry Door – Height of Security Latch.** The security latch is set at 59–3/4". Door hardware must be centered between 30" and 44" above the floor. (2007-CBC §1133B.2.4.2 and ADAAG §4.13.9.) This applies to all guestrooms on premises. (See 2007-CBC §111B.4.2.3.2.) Both as a wheelchair user and a person of short stature that sometimes relies upon hand-crutches, Plaintiff is significantly affected by this reach-range condition. She demands that Defendants lower the security latch in all guestrooms on premises to conform to ADAAG and the CBC. | See response to B383. |

| B438 | **GR 503 – Entry Door – Do Not Disturb Flag.**   The Do Not Disturb flag requires grasping and pinching, which are operational features prohibited by code.   (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)   It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.   Plaintiff demands that Defendant provide a compliant Flag attached to a key ring in order to   meet the requirements of the CBC and ADAAG. | Defendant will punch a hole at the top of the card and put a ring in the hole, which will allow the user to slip the ring between the upper part of fingers and avoid having to perform the prohibited–required–dextral movements. |
|---|---|---|
| B439 | **GR 503 – Entry Door – Height of Coat Hook.**  The coat hook on the hinge side of the door is 73" high, which exceeds the 44 inch maximum permitted by code.  This reduces the ready usability of the coat hook in a confined and sanitary environment. Plaintiff demands that Defendant remount the hook to no higher than 44 inches on-center in conformance with the requirements of the CBC. | See response to B388. |
| B440 | **GR 503 – Bathroom – Entry Door – Door Landing.**  Door landing to the base of the bathroom door is 53–1/2", which is less than the 60 inch minimum required by code to provide wheelchair users with the space required to position themselves and their chair outside the swing when operating the door.   (2007-CBC §§ 1127A.1 and 1127A.2; and ADAAG §§ 4.13 and 4.22.2.)  Plaintiff has been denied access in the designated accessible guestrooms in this manner. She demands that Defendant reconfigure the space to provide a door landing that complies with CBC and ADAAG requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant door landing to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B441 | **GR 503 – Bathroom – Entry Door – Strike Edge Clearance.**  The strike edge clearance for the bathroom door is 2–1/2", which is far below the 18 inch minimum required by code.   (2007-CBC §1133B.2.4.3; and ADAAG at §4.13.6 & Figure 25.)  This barrier discriminates against wheelchair users by making it impossible to position | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide compliant strike edge clearance to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing |

| | | |
|---|---|---|
| | the wheelchair a location where the door can swing upon without striking the chair, and makes it much more difficult, if not impossible, to go through the door independently.  Plaintiff has encountered this barrier many times in the various designated rooms on premises.  She demands that Defendants reconfigure the vestibule, or the swing of the door, to provide no less than 18 inches of strike side clearance on the side to which the door swings, and in full conformance with CBC and ADAAG requirements. | or electrical features of the building, and/or where the modification would be technically infeasible. |
| B442 | **GR 503 – Bathroom – Turning Space.** The distance between the face of the toilet and the tub is approximately 57–1/2", and the distance from the front face of the sink to the opposing wall is 48–1/2". This means it is not possible to inscribe the required 60" diameter circle within the restroom. (2007-CBC §1115B.3.1; and ADAAG §4.23.3.) Plaintiff encountered this barrier and was denied full and equal access in this manner. She demands that Defendant renovate the room to provide compliant clear floor and turning space meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide compliant turning space to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B443 | **GR 503 – Bathroom – Sink – Height of the Sink Counter.**  The height of the sink counter is 36 inches, exceeding the 34 inch maximum height specified by code. (2010-CBC Figure 11B-1D; and ADA Stds at Figure 31.)  This dimension is important to provide ready access to wheelchair users who must reach over the counter to wash their hands <u>within</u> the sink, and avoid spillage.  Plaintiff believes she has encountered this particular barrier or one like it in another designated room, and was denied the ready access to which she was entitled.  She demands that Defendant reposition the counter to be at or below the compliant maximum height in conformance with the CBC and ADAAG requirements | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a sink of **compliant** height. |

| B444 | **GR 503 – Bathroom – Sink – Insulation.** The pipes are not wrapped underneath. There's a hand towel wrapped around part of the pipes. The code requires both to be fully wrapped. (2007-CBC §1115B.4.3(4); and ADAAG §4.19.4.) This is a particular hazard for wheelchair users who lack feeling in their legs. Plaintiff encountered this barrier-risk in the designated rooms and was denied full, equal and safe facilities in this manner. She demands that Defendants insulate this area per CBC and ADAAG requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a sink with **compliant** insulation. |
|---|---|---|
| B445 | **GR 503 – Bathroom – Sink – P–Trap Projection.** The distance from the wall to the face of the P trap is 8–1/4" approximately, which exceeds the 6 inch maximum specified by code. (2007-CBC, Figure 11B-1D, and is identical in ADAAG.) The purpose of this requirement is to make sure the P-Trap does not intrude into the knee space. Plaintiff demands that Defendant reconfigure the P-Trap projection in conformance with CBC and ADAAG requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a sink with **compliant** knee space. |
| B446 | **GR 503 – Bathroom – Sink – Electrical Outlet – Reach Over Obstruction.** The depth of the counter is 21–1/4. That's a reach back to the electrical outlet in the corner. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a new sink. |
| B447 | **GR 503 – Bathroom – Sink – Mirror Mounting Height.** The height of the mirror above the counter is 40–3/8". This exceeds the 40 inch maximum AFF permitted by code. (CBC (Aug. 09 rev.) §1115B.8.1.1; and ADAAG 4.19.6.) This added height makes it difficult to impossible for the wheelchair user, who is already seated low, to use the mirror in a normal manner. Plaintiff believes she encountered this particular barrier condition, or within other designated accessible guestrooms. She demands that Defendant provide a compliant mirror meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a bathroom mirror at the **compliant** height. |

| | | |
|---|---|---|
| | | |
| B448 | **GR 503 – Bathroom – Towel Rack – Height for Available Front Approach.** The front approach towel rack at the end of the sink is 53" above the floor. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a towel rack of **compliant** height. |
| B449 | **GR 503 – Bathroom – Toilet – Side Transfer Space.** The distance from the wall beside the toilet to the end of the counter is 36–3/8 of an inch. The distance between the end of the sink counter and the edge of the toilet is 11–3/8". | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide compliant side transfer space to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B450 | **GR 503 – Bathroom – Toilet – Centerline Dimension.** The toilet is 17–1/2" on center from the adjacent wall, which is below the 18-inch exact centerline dimension specified by code. (2010-CBC §1115B.4.1(1); and ADAAG 4.17.3 and Fig. 30.) This accurate-dimension provides wheelchair users with a predictable built environment and a learned-leverage point for accomplishing a weighted and partially blind transfer. It is one of the most important specified dimensions under the code for avoiding hazard. Plaintiff has encountered this barrier-risk in this or other designated accessible guestrooms and was denied ready access in this manner. She demands that Defendant remount the toilet to the exact specified dimension to conform to code. | See response to B398. |
| B451 | **GR 503 – Bathroom – Toilet – Height of Toilet Seat.** The height of the toilet seat is 15–1/4", which is below the 17-19 inch range specified by code. (2010-CBC § 1115B.4.1(4); and ADAAG §4.16.3.) This is significantly below the required height and is | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a toilet seat of **compliant** height. |

| | | |
|---|---|---|
| | a hazard for wheelchair users attempting a seated-transfer.   Plaintiff has used this facility and was denied ready access in this manner.   She demands that Defendant provide a compliant water closet meeting the requirements of ADAAG and the CBC. | |
| B452 | **GR 503 – Bathroom – Toilet – Side Grab Bar – Projection.**   The distance from the wall behind the toilet to the leading edge of the side grab bar is 50–3/8, which is less than the 54 inch minimum specified by the code. (ADAAG §4.17.6 and Figure 30.)   It also projects less than the 24 inch minimum projection required by the code. (2007– CBC §1115B.4.1(3)(3.1).)   This barrier discriminates against wheelchair users by reducing the usability and effectiveness of the grab bar in getting onto and off the fixture.   Plaintiff believes she encountered this particular barrier condition, or within other designated accessible guestrooms.   She demands that Defendant reposition the grab bar so that it projects appropriately in front of the toilet in conformance with CBC and ADAAG requirements. | See response to B399. |
| B453 | **GR 503 – Bathroom –Toilet – Side Grab Bar – Obstruction.**   The distance from the bottom of the phone to the top of the side grab bar is 3–3/4" and the phone projects 5" off the face of the wall, which obstructs the usable length of the grab bar in violation of code.   (2007-CBC §§ 1115B.4.1(1) and 1115.7.1; and ADAAG §§ 4.16.4, 4.26.2 & Fig. 29.)   This is a safety hazard affecting wheelchair users while at their most vulnerable.   Plaintiff encountered has this barrier-risk and was denied full and equal access in this manner.   She demands that Defendant provide compliant and unobstructed grab bars meeting the requirements of the CBC and ADAAG. | See response to B400. |

| B454 | **GR 503 – Bathroom – House Phone – Clear Floor Space.** The distance from the wall behind the toilet to the outside edge of the phone above the grab bar is 31–5/8 to the interior side of the phone is 27–5/8", so the phone is not adjacent to a clear floor space, which means that the house phone is not mounted adjacent to a compliant clear floor space. (2010-CBC Fig. 13-A; and ADAAG §§ 4.31, 4.27 & 2010 ADA Stds. 704, 308, 309.) This requirement ensures wheelchair users are able to approach and reach the phone in a readily accessible manner. Plaintiff has encountered this barrier in designated accessible guestrooms and was denied ready access in this manner. She demands that Defendant relocate the phone next to a code-compliant clear floor space. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will remove the phone. |
|------|------|------|
| B457 | **GR 503 – Bathroom – Tub – Back Wall Grab Bar – Mounting Height.** There's a single grab bar on the back wall of the tub that is set at a distance of 36–1/8" above the finished floor. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide **compliant** grab bars. |
| B458 | **GR 503 – Bathroom – Tub –Grab Bar By Mixing Valve – Mounting Height.** The grab bar above the mixing valve is set at a height 36–1/8" above the finished floor. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide **compliant** grab bars. |
| B459 | **Bathroom – Tub –Grab Bars – Knuckle Space.** The knuckle space for both of these grab bars along the back wall and the one on the end wall are 1–3/4. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide **compliant** grab bars. |
| B460 | **GR 503 – Bathroom – Tub – Shower Wand – Non-Operable.** The shower wand adjustment bracket is taped in place so it cannot be moved, it cannot be adjusted. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a **compliant** shower spray unit. |
| B461 | **GR 503 – Bathroom – Robe Hook.** The robe hook on the outside of the tub is set at a height of 54" above the floor, which exceeds the 44 inch maximum permitted by code. This reduces the ready usability of the robe hook in a confined and sanitary environment. Plaintiff demands that Defendant remount the hook to no higher | See response to B402. |

| | | |
|---|---|---|
| | than 44 inches on-center in conformance with the requirements of the CBC. | |
| B462 | **GR 503 – Sleeping Room – Closet – GPT Operation.** This door is a bi–fold door that requires the user to grasp the edge of the door to open and close the door. This is an operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant door-operation meeting the requirements of the CBC and ADAAG. | See response to B417. |
| B463 | **GR 503 – Sleeping Room – Closet – Landing.** The door landing from the face of the closed closet door to the opposite wall is 47", which is less than the 60 inch minimum required by code. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant landing to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B464 | **GR 503 – Sleeping Room – Closet – Iron Set – Mounting Height.** The height of the iron is 68–1/2" above the floor. The bracket for the ironing board is 59–1/4" above the floor. | See response to B419. |
| B465 | **GR 503 – Sleeping Room – Entry to Connecting Suite – Landing.** The door landing for the door to the adjacent suite is 52 to the wall on the opposite side of the hallway. This is less than the 60 inch minimum required by code to provide wheelchair users with the space required to position themselves and their chair outside the swing when operating the door. (2007-CBC §§ 1127A.1 and 1127A.2; and | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant landing to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the |

| | | |
|---|---|---|
| | ADAAG §§ 4.13 and 4.22.2.)  Plaintiff is affected in this manner. She demands that Defendants reconfigure the space to provide a door landing that complies with CBC and ADAAG requirements | modification would be technically infeasible. |
| B466 | **GR 503 – Sleeping Room – Entry to Connecting Suite – Strike Edge Clearance.** The strike edge clearance for the door to the adjacent suite is 7", which is far below the 18 inch minimum required by code. (2007-CBC §1133B.2.4.3; and ADAAG at §4.13.6 & Figure 25.) This requirement applies to all guestrooms on premises, i.e., the designated accessible and non-designated rooms alike. (See 2007-CBC §111B.4.2.3.2.)   This condition discriminates against wheelchair users by making it impossible to position the wheelchair a location where the door can swing upon without striking the chair, and makes it much more difficult, if not impossible, to go through the door independently.   In her various stays at the hotel for convention gatherings, Plaintiff has encountered this condition repeatedly and has been affected in this manner.   She demands that Defendants renovate the connecting doors and/or furniture layouts as necessary for of all guestrooms on premises to provide no less than 18 inches of strike side clearance on the side to which the door swings, and in full conformance with CBC and ADAAG requirements. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide compliant strike edge clearance to the maximum extent feasible. However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B467 | **GR 503 – Sleeping Room – Entry to Connecting Suite – Security Latch – Mounting Height.** The mounting height of the security latch is 64–1/4" above the floor. Door hardware must be centered between 30" and 44" above the floor.  (2007-CBC §1133B.2.4.2 and ADAAG §4.13.9.)  This applies to all guestrooms on premises.  (See 2007-CBC §111B.4.2.3.2.)    Both as a wheelchair user and a person of short stature that sometimes relies upon hand-crutches, Plaintiff is significantly affected by this reach-range condition.   She demands that Defendants lower the security latch in all guestrooms on premises to conform to | See response to B413. |

Case 1:10-cv-02018-AWI-GSA   Document 52   Filed 12/13/12   Page 118 of 122

|  | ADAAG and the CBC. |  |
|---|---|---|
| B468 | **GR 503 – Sleeping Room – Entry to Connecting Suite – Dead Bolt – GPT Operation.** The dead bolt lock requires grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide a compliant deadbolt meeting the requirements of the CBC and ADAAG. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a compliant dead bolt. |
| B469 | **GR 503 – Sleeping Room – Entry to Connecting Suite – Dead Bolt – Mounting Height.** The dead bolt lock is set at a height of 59" above the floor. | See response to B414. |
| B470 | **GR 503 – Sleeping Room – Entry to Connecting Suite – Kick Plate Height.** The kick plate is 8–1/2" above the floor. The Code requires that the bottom 10 inches of all doors shall have a smooth, uninterrupted surface to allow the door or gate to be opened by a wheelchair footrest without creating a trap or hazardous condition. (2007-CBC §1113A.5.) As a wheelchair user, Plaintiff is affected by this condition. She demands that Defendant provide a 10 inch kick plate area on all guestrooms doors throughout the hotel, or other compliant surface in conformance with CBC requirements. | See response to B416. |
| B471 | **GR 503 – Sleeping Room – Beds – Space Between.** There are two beds in this room and the distance between the beds is 34" clear, which is below the 36 inch minimum specified by code. (2010-CBC §1111B.4.3; and ADAAG §9.2.2.) This denies wheelchair users the space they need for positioning their chair property and making a | For all non-suite accessible guestrooms where this condition is replicated, Defendant will modify the furniture to provide **compliant** space between the beds. |

|  |  |  |
|---|---|---|
|  | seated transfer onto the bed, which is a vulnerable situation to begin with. Plaintiff has encountered this barrier and has been denied ready and safe access in this manner. She demands that Defendants reconfigure the space and furniture to provide the complaint space required by the CBC and ADAAG. |  |
| B474 | **GR 503 – Sleeping Room – Cabinet – Coffee Dispenser & Water Bottles – Required Reach Back Across an Obstruction.** The height of the cabinet with the coffee dispenser and water on it is 37–3/4" above the floor.   The height of the coffee dispenser water slot is 49–3/4" above the floor, across the obstruction of the cabinet. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will place these items within reach range. |
| B475 | **GR 503 – Sleeping Room – Desk – Knee Space.** The knee space provided underneath the sink is 26" above the floor. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a desk with **compliant** knee space. |
| B476 | **GR 503 – Sleeping Room – Circulation Through Room.**   The distance from the chair to the bed is 30".  The distance from the desk chair to the bed is 35", with the desk chair in the in position. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will modify the furniture to provide sufficient clear floor and maneuvering space. |
| B477 | **GR 503 – Sleeping Room – Thermostat – Landing.**  The thermostat is located on the wall behind a bedside table that projects off the wall a distance of 23", so it is not adjacent to a clear floor space. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a **compliant** thermostat and landing to the maximum extent feasible.      However, no modification will be required that would affect any significant load-bearing, plumbing or electrical features of the building, and/or where the modification would be technically infeasible. |
| B478 | **GR 503 – Sleeping Room – Thermostat – GPT Operation.**   The thermostat requires grasping, pinching and twisting of the wrist to operate, which are operational features prohibited by code.        (2010-CBC | For all non-suite accessible guestrooms where this condition is replicated, Defendant will provide a **compliant** thermostat. |

| | | |
|---|---|---|
| | §1117B.6(4); and ADAAG §9.2.2.) It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate.  Plaintiff demands that Defendant provide a compliant thermostat meeting the requirements of the CBC and ADAAG. | |
| B479 | **GR 503 – Sleeping Room – Corner Light – GPT Operation.**  The corner light has a twist type control on it, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide a compliant light switch meeting the requirements of the CBC and ADAAG. | See response to B429. |
| B480 | **GR 503 – Sleeping Room – Window – Controls – Mounting Height.** The height of the control for the openable window is 54– 1/4" above the floor on center for a front approach. | For all non-suite accessible guestrooms where this condition is replicated, Defendant will modify the height of the window controls. |
| B481 | **GR 503 – Sleeping Room – Windows – Batons – Height.**  The batons for the curtains are set at a height of 57" above the floor.  This height places the wands outside the readily accessible height for wheelchair users, and makes them difficult to impossible to use from the seated-position. Plaintiff has encountered this barrier in the designated rooms and was denied ready access in this manner.  She demands that Defendant provide compliant controls and reach range meeting the requirements of the CBC and ADAAG. | See response to B428. |
| B482 | **GR 503 – Sleeping Room – Windows – Batons – GPT Operation.** The batons for the shears and the drapes require grasping, pinching and twisting of the wrist, which are operational features prohibited by code. (2010-CBC §1117B.6(4); and ADAAG | See response to B428. |

| | | |
|---|---|---|
| | §9.2.2.)  It is non-compliant with the code that requires that controls in designated rooms not require grasping, pinching, or twisting of the wrist (GPT) to operate. Plaintiff demands that Defendant provide compliant batons meeting the requirements of the CBC and ADAAG. | |
| B483 | GR 503 – Sleeping Room – Windows – Push Pressure. Push pressure required to open this window is 12 pounds of pressure, which greatly exceeds the 5 lbs. maximum permitted by code, and is typical.  (2007-CBC   §1133B.2.5.)      This      barrier discriminates     against     persons     with disabilities whose physical condition requires the use of a wheelchair for mobility, such as Plaintiff   and   her   specific   disabilities (hereafter referred to with the short handle "wheelchair users") by making it more difficult to impossible to go through the door without assistance. Plaintiff has encountered this  particular  condition  in  guestrooms throughout the hotel, and was affected in this manner.     She  demands  that  Defendants adjust   all   public   interior   entrances   on premises so that the amount of push pressure required to operate is no more than 5 lbs. | See response to B426. |

## VENDING MACHINE ROOMS

| Reference No. | Alleged Barrier | Agreed Upon Correction |
|---|---|---|
| B498 | The typical vending machine room on the various floors, which are located just outside the x03 column of rooms, has a distance between the face of the machines and the adjacent wall of between approximately 23 ¾ to 24 ¾", which is less than the 48 inch minimum required by code for an alcove with a typical depth of the ice machine room is 50–3/4". | Defendant agrees to remove the soda vending machine, and face out the ice vending machine so that  disabled  persons  have sufficient **compliant** maneuvering space   to   the   maximum   extent feasible.      However,      no modification will be required that would affect any significant load-bearing,  plumbing  or  electrical features of the building, and/or where the modification would be |

| | | technically infeasible. |
|---|---|---|